ATTORNEYS' TITLE GUARANTY FUND, INC.

ATG® OWNER FORM - SCHEDULE A

Policy No.: 040611500025-01

Date of Policy: July 08, 2004
State Issued: IL
File Name: 1326451

Amount of Insurance: $231,680.08

1. Name of Insured:

   W.W. FUNDING L.L.C.

2. The estate or interest in the land described herein and which is covered by this policy is, at the effective date hereof, vested in the named insured and is Fee Simple.

3. The land referred to in this policy is described as follows:

   LOTS 6 AND 7 IN BLOCK 46 IN HULBERT MILWAUKEE AVENUE SUBDIVISION, BEING A SUBDIVISION OF LOT 1 IN RESUBDIVISION BY ELIZABETH REDLING OF PART OF LILL AND DIVERSEY'S SUBDIVISION OF PART OF THE SOUTHWEST 1/4 OF SECTION 30, TOWNSHIP 41 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

*ISSUED BY*

Smith & Kruse
3924 W. Devon
Suite 200
Lincolnwood, IL 60712
847-674-5555

6115
Member No.    Signature of Member or Authorized Signatory

ATG FORM 1011
© ATG (REV. 12/00)                    *Prepared by ATG Resource™*                    FOR USE IN: ALL STATES

## ATTORNEYS' TITLE GUARANTY FUND, INC.

## ATG® OWNER FORM - SCHEDULE B

Policy No.: 040611500025-01                                State Issued: IL

This policy does not insure against loss or damage (and ATG will not pay costs, attorneys' fees, or expenses) that arise by reason of the following exceptions:

### Standard Exceptions

1. Rights or claims of parties in possession not shown by the public records.

2. Encroachments, overlaps, boundary line disputes, and any matters that would be disclosed by an accurate survey and inspection of the premises.

3. Easements, or claims of easements, not shown by the public records.

4. Any lien, or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law, and not shown by the public record.

5. Taxes or special assessments that are not shown as existing liens by the public records.

### Special Exceptions

6. THE LIEN OF TAXES FOR THE YEAR 1998 AND THEREAFTER.

   PERMANENT INDEX NUMBER: 10-30-308-016-0000
   FIRST INSTALLMENT OF THE 2003 TAXES $3767.95 IS NOT POSTED PAID.
   SECOND INSTALLMENT OF THE 2003 TAXES IS NOT YET DUE AND PAYABLE.
   FIRST INSTALLMENT OF THE 2002 TAXES $3718.30 IS NOT POSTED PAID.
   SECOND INSTALLMENT OF THE 2002 TAXES $3817.60 IS NOT POSTED PAID.
   2004 GENERAL REAL ESTATE TAXES ARE NOT YET DUE OR PAYABLE.

   NOTE: THE UNPAID BALANCE OF THE TAXES FOR THE YEAR 1998 WERE SOLD ON 4/3/00 TO PLYMOUTH FOR THE AMOUNT OF $8654.06, AND INTEREST, PENALTY, COSTS AND ALL CHARGES, IF ANY, ACCRUED THEREUNDER BY REASON OF THE PAYMENT OF SUBSEQUENT GENERAL TAXES OR SPECIAL ASSESSMENTS.

   (AFFECTS LOT 6)

   THE LIEN OF TAXES FOR THE YEAR 2002 AND THEREAFTER

   PERMANENT INDEX NUMBER: 10-30-308-017-0000
   FIRST INSTALLMENT OF THE 2003 TAXES $3767.95 IS NOT POSTED PAID.
   SECOND INSTALLMENT OF THE 2003 TAXES IS NOT YET DUE AND PAYABLE.
   FIRST INSTALLMENT OF THE 2002 TAXES $3718.30 IS NOT POSTED PAID.
   SECOND INSTALLMENT OF THE 2002 TAXES $3817.60 IS NOT POSTED PAID.
   2004 GENERAL REAL ESTATE TAXES ARE NOT YET DUE OR PAYABLE.

   (AFFECTS LOT 7)

7. Mortgage dated June 18, 2004, and recorded July 8, 2004, as Document No. 0419005014, executed by W.W. FUNDING, L.L.C.,

6115
Member No.                     Signature of Member or Authorized Signatory

ATG FORM 1012
© ATG (REV. 7/29)                 Prepared by ATG Resource™                    FOR USE IN: IL, IN

Policy No.: 040611500025

a Limited Liability Company, and given to PLAZA BANK, to secure a note in the amount of $445,000.00, and such other sums as provided therein.

8. Assignment of Rents dated June 18, 2004 and recorded July 8, 2004 as Document No. 0419005015 executed by W.W. FUNDING, L.L.C., a Limited Liability Company and given to PLAZA BANK.

9. EXISTING LEASES AND TENANCIES, AND RIGHTS OF TENANTS THEREUNDER, AND THOSE CLAIMING BY, THROUGH OR UNDER THOSE TENANTS.

10. PLAT OF SUBDIVISION RECORDED AS DOCUMENT NO. 7035296.

*End of Schedule B*

# ENDORSEMENT

## ATTORNEYS' TITLE GUARANTY FUND, INC.

Policy No.: 040611500025-01                                    State Issued: IL

**STANDARD EXCEPTION WAIVER ENDORSEMENT 1 (RESIDENTIAL PROPERTY)**

This endorsement shall be effective only if the insured premises is improved with residential (1 to 6 family unit or condominium) property.

Standard Exceptions 1-5 have been deleted.

This endorsement is made a part of the policy and is subject to all terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

| July 8, 2004 | 6115 | |
|---|---|---|
| Date | Member No. | Signature of Member or Authorized Signatory |

ATG FORM 2038
© ATG (REV. 1/24)                    Prepared by ATG REsource ™                    FOR USE IN ALL STATES

# ENDORSEMENT

## ATTORNEYS' TITLE GUARANTY FUND, INC.

Policy No.: 040611500025-01　　　　　　　　　　　　　　State Issued: IL

INFLATION ENDORSEMENT

ATG, recognizing the current effect of inflation on real property valuation and intending to provide additional monetary protection to the insured named in the policy, hereby modifies the policy as follows:

1. Notwithstanding anything contained in the policy to the contrary, the Amount of Insurance provided by the policy, as stated in Schedule A, is subject to cumulative annual upward adjustments in the manner and to the extent hereinafter specified.

2. "Adjustment Date" is defined, for the purpose of this endorsement, to be 12:01 a.m. on the first January 1 that occurs more than six months after the Date of Policy, shown in Schedule A of the policy to which this endorsement is attached, and on each succeeding January 1.

3. An upward adjustment will be made on each of the Adjustment Dates, as defined above, by increasing the maximum amount of insurance provided by the policy (as the amount may have been increased theretofore under the terms of this endorsement) by the same percentage, if any, by which the annual "ENR 20-City Building Cost Index" has increased (as published in the "Fourth Quarterly Cost Report," December issue of the *Engineering News Record*, a McGraw-Hill publication); provided, however, that the maximum Amount of Insurance in force shall never exceed 150% of the Amount of Insurance stated in Schedule A of the policy, less the amount of any claim paid under the policy which, under the terms of the Conditions and Stipulations, reduces the amount of insurance in force. There shall be no annual adjustment in the Amount of Insurance for years in which there is no increase in the Building Cost Index.

4. In the settlement of any claim against ATG under the policy, the Amount of Insurance in force shall be deemed to be the amount that is in force as of the date on which the insured claimant first learned of the assertion or possible assertion of such claim, or as of the date of receipt by ATG of the first notice of such claim, whichever shall first occur.

This endorsement is made a part of the policy and is subject to all terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

| July 8, 2004 | 6115 | |
|---|---|---|
| Date | Member No. | Signature of Member or Authorized Signatory |

ATG FORM 2023
© ATG (REV. 11/05)　　　　　　　　　　*Prepared by ATG REsource*™　　　　　　　　　　FOR USE IN ALL STATES

# Exhibit 6

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

JOSEPH M. GAMBINO, Independent Administrator of the Estate of Joseph J. Gambino; and NORTH STAR TRUST COMPANY as Trustee U/T/A Nos. 13534, 23994 and 23985,

    Plaintiffs,

v.

WW FUNDING, LLC; 21st CENTURY FINANCIAL PLANNERS, INC.; BOULEVARD MORTGAGE CORPORATION; DENNIS D. KOONCE; ENZO DI BENEDETTO; SALVATORE DI BENEDETTO; TITLE AMERICA, INC.; WASHINGTON MUTUAL BANK; STEPHEN WOLF; ROSS WAXMAN; and PLAZA BANK,

    Defendants.

---

DENNIS KOONCE and BOULEVARD MORTGAGE CORPORATION,

    Counterplaintiffs,

v.

JOSEPH M. GAMBINO, Independent Administrator of the Estate of Joseph J. Gambino; and NORTH STAR TRUST COMPANY, Trustee,

    Counterdefendants.

---

WW FUNDING, LLC,

    Counterplaintiff,

v.

JOSEPH M. GAMBINO, Independent Administrator of the Estate of Joseph J. Gambino; and NORTH STAR TRUST COMPANY, Trustee,

    Counterdefendants.

ENTERED
JUDGE NANCY J. ARNOLD-1732
NOV 30 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge Nancy J. Arnold

Calendar No. 11

Case No. 05 CH 4303

## FINDINGS OF FACT AND JUDGMENT AFTER TRIAL

THIS CAUSE COMES ON for ruling after trial on all issues.

This suit involves competing claims of ownership as to three pieces of

1

C02077

real estate. One is located in Niles, Illinois ("the Niles property"), and the other two are located in Chicago ("the Kedzie property" and "the Lavergne property"). Plaintiffs claim that title to the properties was stolen from them by means of fraudulent, forged documents. Each of the properties is held by a separate land trust at North Star Trust Company. The Plaintiffs are the land trustee and the estate of Joseph Gambino, who was the owner of 100% of the beneficial interest in each land trust. Mr. Gambino initially brought this suit, but died a few months before trial.

Plaintiff's Corrected Second Amended Complaint is pled in six counts, two counts as to each piece of real estate. As to each, there is one count seeking to quiet title and a second count alleging slander of title. One group of Defendants, the Koonce – Boulevard Mortgage – Title America group, has raised affirmative defenses. These consist of waiver, estoppel, ratification and laches.

The Koonce group of Defendants has also filed an Amended Counterclaim. Here they plead one count to quiet title (Count I) and one count for slander of title (Count V) as to the Lavergne property; one count in unjust enrichment (Count II) and one count in fraud (Count III) as to all three properties; and one count for intentional interference with a business relationship (Count IV) as to the Niles and Kedzie properties.

Another Defendant, WW Funding, LLC, has filed a counterclaim in two counts. One count concerns the Kedzie property and the other count concerns the Niles property. In each count WW Funding seeks to quiet title in itself or, in the alternative, for reimbursement from the Plaintiff Estate of various sums. Plaintiffs have filed an affirmative defense to this counterclaim.

2

C 02078

## PLAINTIFF'S QUIET TITLE CLAIMS

### The Pleadings

At the close of the Plaintiffs' case, the defendants in the counts for quiet title as to each property were:

Count I (the Lavergne property): Boulevard Mortgage Corporation and Washington Mutual Bank;

Count III (the Niles property): WW Funding, LLC and Plaza Bank;

Count IV (the Kedzie property): WW Funding, LLC and Plaza Bank.

Plaintiffs allege that, until the acts complained of in this lawsuit, title to each of these properties was properly held by the Trustee in each respective land trust. Plaintiffs allege that, as to each property, title appeared to be transferred out, but that each deed transferring out of the trust was fraudulent and forged. As to the Lavergne property (Count I), it is alleged that the forged deed was a trustee's deed, dated April 28, 2003, as to which the grantee was Koonce. Thereafter, it is alleged, Koonce executed a mortgage on the property in favor of Washington Mutual Bank and a quitclaim deed to Boulevard Mortgage Company. The initial deed out of trust (the alleged forged deed), together with the subsequent mortgage and quitclaim deed by Koonce, are all alleged to constitute clouds on title.

As to the Niles property (Count III), it is alleged that two forged instruments of title gave the appearance of transferring title out of the trust: a forged trustee's deed to Joseph Gambino dated December 10, 2002, and a forged deed with Joseph Gambino as the purported grantor and WW Funding, LLC as the grantee. A further cloud on title is alleged to be a mortgage executed by WW Funding, LLC, in favor of Plaza Bank.

3

As to the Kedzie Property (Count V), it is alleged that another two forged instruments gave the appearance of transferring title out of the trust: a forged trustee's deed to Joseph Gambino, dated December 10, 2002 and a forged deed from Joseph Gambino to dismissed party 21st Century Financial Planners. These documents are alleged to be clouds on title executed thereafter: a deed from 21st Century to WW Funding, LLC, and two mortgages and related assignments of rent running from WW Funding, LLC to Plaza Bank.

### Law/Burdens of Proof

To proceed on an action to quiet title, a Plaintiff must first establish his own title to the property. A Plaintiff must recover on the strength of his own title; without title, he cannot claim that there is cloud on title. *Lakeview Trust & Savings Bank v. Estrada*, 134 Ill. App. 3d 792, 812 (1st Dist. 1985). A cloud on title is "the semblance of a title, either legal or equitable, or a claim of an interest in lands, appearing in some legal form but which is, in fact, unfounded or which it would be inequitable to enforce." *Lakeview Trust & Savings Bank v. Estrada, supra*, 134 Ill. App. 3d at 812. Forged deeds have been determined to be clouds on title. See, e.g., *Oswald v. Newbanks*, 336 Ill 490 (1929). Proof of forgery on a deed of conveyance must be by clear and convincing evidence from disinterested witnesses, in order to overcome the certificate of acknowledgement of signature. *Estate of Bontkowski v. Bontkowski*, 337 Ill. App. 3d 72, 76 (1st Dist. 2003).

The latter two of the above-cited cases are of special interest to the case at bar. In *Bontkowski*, the plaintiff's proof of a forged deed was found sufficiently established by testimony by a handwriting expert that the signatures on a deed were not that of the decedent, and by testimony of the notary who affixed her signature and seal to the deed. The notary admitted that someone had given her the deed to notarize; that the purported

4

C 0 2 0 8 0

signatory was not present; that she had never met the signatory; and that she had no idea what the decedent's signature looked like. In *Oswald*, too, the notary made similar admissions to wrongly having affixed his signature and seal. In that case the plaintiff was still alive. The court deemed the certificate discredited and accepted as credible the plaintiff's testimony that she had not signed the deed. On her bill in chancery to cancel a forged instrument as a cloud on title, the court said, the *only* issue was whether the plaintiff had executed the deed. It was her burden to prove that she did not, and if that burden was carried, she was entitled to relief.

As to the affirmative defenses raised by the Koonce – Boulevard Bank – Title America Defendants, assuming they were meant to apply to the quiet title counts, it was the Defendants' burden to establish either waiver, estoppel, ratification or laches.

### Findings of Fact

The validity of the Plaintiff land trustee's title to the properties before the subject transfers was uncontested. So too, as it turned out, was the Plaintiffs' proof that the deeds purporting to take the property out of trust were forged, as were the other deeds identified above.

Plaintiffs' proof was overwhelming. The bank officers whose signatures purportedly appear on the deeds out of trust testified that they did not sign these deeds, did not authorize anyone to sign their names, and the signatures purporting to be theirs were not.

The notary whose seal and signature appears on two of the trustee's deeds, Ms. Regina Brophy, also testified. She admitted that she notarized these documents, as well as approximately 40 other documents, each at the request of Defendant Sal DiBenedetto, without seeing the signatory, knowing the signatory or having any familiarity with the

5

C02081

signatories' signatures. She was a secretary or receptionist in the Office of the Public Defender, located in the Markham courthouse. Since the Recorder's office was also in that courthouse, she was conveniently located for Sal DiBenedetto's purposes.

The notary seal and signature that appears on the third deed out of the trust do not coincide with one another. The notary's signature appears to be "Jane (illegible)," but someone has applied the notary seal of "Carol Castillo."

As to the deeds purportedly signed by Joseph Gambino and conveying the Niles and Kedzie properties to WW Funding, LLC. and 21st Century Financial, respectively, the notary seal and signatures on those deeds were that of Regina Brophy, whose testimony negated the validity of her certificate, thereby eliminating any presumption of validity.

Finally, there was competent expert testimony concerning the non-authenticity of the signatures purporting to be those of Joseph Gambino. Diane Marsh, a forensic document examiner, gave expert testimony on behalf of the Plaintiffs. The court found her testimony to be extremely credible, thoroughly articulated, and well-supported. She was barely cross-examined. She offered her opinion about the authenticity of many signatures purporting to be Joseph Gambino's, on a long series of documents, approximately thirty-eight in number. Among these were the purported deeds referenced above, one ostensibly conveying the Niles property to WW Funding, LLC and the other ostensibly conveying the Kedzie property to 21st Century Financial. Her opinion, which was to a reasonable degree of certainty as a forensic document examiner and at the highest level of certainty as recognized by standard terminology in the field, was that Mr. Gambino had NOT signed those documents.

Defendants offered no evidence to refute any of this evidence. No witness contradicted the bank officers about their not having signed the deeds out of trust. No expert contradicted Ms. Marsh's opinion that the pertinent signatures were not those of Joseph Gambino. Notary Regina Brophy's testimony was unrebutted. Defendant Sal DiBenedetto did testify under oath that Joseph Gambino gave him deeds that were already signed, but the court found the level of Sal DiBenedetto's credibility to be zero in all respects.

In sum, the court finds that the Plaintiffs have proven their case by overwhelmingly clear and convincing evidence. The only thing that could defeat their action to quiet title, then, is if the court finds that the Koonce – Boulevard Mortgage – Title America group of defendants has proven any of their affirmative defenses, set out as waiver, estoppel, ratification or laches.

### Affirmative Defenses

The court finds that there has been no proof of any facts or circumstances that would give rise to the bar of laches. As to estoppel, there was no proof of any statement or conduct by Joseph Gambino that encouraged or led these defendants or anyone else to produce these forged and falsely notarized documents, purportedly transferring title, to their detriment. *See Geddes v. Mill Creek Country Club*, 196 Ill. 2d 302, 313 (2001).

Nor is there any proof of waiver or ratification of these documents by Joseph Gambino. *Livingston v. Wiler*, 32 Ill. 387 (1863) has been cited for the law on this issue. In that case, a grantor was found to have ratified transfer of property by unauthorized documents. There was no evidence here, however, that Mr. Gambino ever saw any of these false documents until some time before March 7, 2005, shortly after which he filed

C 0 2 0 8 3

this suit. The one possible exception is a forged mortgage on the Niles property, running to Zipperstein, dated December 20, 2002 and notarized by Regina Brophy. Ms. Marsh opined that the "Joseph Gambino" signature on this document was not Mr. Gambino's. A suit to foreclose on that mortgage was filed in January 2004. Joseph Gambino filed a pro se appearance in that case in February 2004, which was followed by an additional appearance by counsel in May, 2004. It could be speculated that in conjunction with that suit Mr. Gambino would have had occasion to see a copy of the subject mortgage, but upon examination at trial, the attorney who filed that additional appearance was not asked that question. Nor was he able to recall any of the circumstances that led to the dismissal of the foreclosure suit, which occurred in July 2004; the order of dismissal states that the debt was paid in full. The attorney testified only that Mr. Gambino had been surprised by the dismissal. This inconclusive evidence cannot support a finding of ratification by Mr. Gambino.

The court finds that there has been a failure of proof of the affirmative defenses. Accordingly, judgment quieting title on all three properties will be entered in favor of the Plaintiffs.

## PLAINTIFF'S SLANDER OF TITLE CLAIMS

In their slander of title counts, Plaintiffs allege that through these forged deeds and other forged and fraudulent documents, the various defendants have slandered Plaintiffs' title to the three properties, causing actual damages to them, in particular to the holder of the beneficial interest (the Estate of Joseph Gambino). They allege malice on the part of the defendants, and in addition to actual damages, seek punitive damages.

8

C02084

As of the close of the Plaintiffs' case, the Defendants in the slander of title counts were:

Count II (the Lavergne property): Sal DiBenedetto, Enzo DiBenedetto, Dennis Koonce, Boulevard Mortgage Corporation, and Title America, Inc.

Count IV (the Niles property): Sal DiBenedetto, Enzo DiBenedetto, Dennis Koonce, Boulevard Mortgage Corporation, Title America, Inc., WW Funding, LLC, and Stephen Wolf.

Count V (the Kedzie property): Sal DiBenedetto, Enzo DiBenedetto, Dennis Koonce, Boulevard Mortgage Corporation, Title America, Inc., WW Funding, LLC, and Stephen Wolf.

The elements to be proved in an action for slander of title are: 1) the defendant made a false claim to title to the subject property; 2) the claim was published or recorded and disparaged the plaintiff's title; 3) the plaintiff suffered damages, which may include attorneys' fees necessary to correct the slander and quiet title; see *Stirs v. City of Chicago*, 24 Ill. App. 3d 118, 124 (1st Dist.1974); *Home Investment Fund v. Robertson*, 10 Ill. App. 3d 840 (2d Dist. 1973); and 4) the defendant acted with malice, which is defined as including reckless disregard of the consequences to the real title holder. Such reckless disregard may be found if a defendant publishes the slandering document despite a high degree of awareness of its probable falsity or in the face of serious doubts as to its truth. *Chicago Title & Trust Co. v. Levine*, 333 Ill. App. 3d 420, 424 (3d Dist. 2002); *Contract Development Corp. v. Beck*, 255 Ill. App. 3d 660, 665 (2d Dist. 1994).

### Findings of Fact

As indicated above, with regard to the quiet title claims, that false claims to title to each of these properties were recorded and disparaged Plaintiffs' title has been established.

The evidence also identified the actors who were responsible for the publication and recording of these false documents. As to each defendant the court has considered whether the evidence established the requisite malice to support a slander of title claim.

### Defendant Sal DiBenedetto

This Defendant admitted that he recorded all the deeds out of the trusts as to all three properties. As to the Lavergne property, the forged deed conveyed title directly to Defendant Koonce. Sal DiBenedetto also admitted recording the forged deeds "from" Joseph Gambino to WW Funding, LLC (the Niles property) and to 21st Century Financial (the Kedzie property). There were multiple other transactions as to each of the three properties. Sal DiBenedetto freely admitted that he was involved in virtually all aspects as to each of them. There was no doubt that this Defendant acted with malice. He blatantly used forged and fabricated documents – forty-five in total – to steal Joseph Gambino's three properties and to obtain cash.

### Defendant Enzo DiBenedetto

As each of the properties went through closings upon forged documents, disbursements of large amounts of cash were made to this Defendant. Large amounts of money obtained from selling and mortgaging Gambino's properties were deposited into this Defendant's bank accounts, as well as a hefty sum delivered to his girlfriend and deposited in her account. Enzo DiBenedetto and Sal, his brother, both testified that these deposits were converted into cash and "given to Joe" (Joseph Gambino). Sal DiBenedetto, who professes to have no bank account of his own, freely admitted that his brother's accounts were used to process the receipts from the closings on the properties. Both

10

C02086

brothers demonstrated an unlimited ability to tell untruths. There is no doubt that malice was present in the actions of Defendant Enzo DiBenedetto's sharing of the spoils.

### Defendant Dennis Koonce

This Defendant was involved with Sal Di Benedetto in everything, right from the beginning. As to the Niles property, there was very credible testimony from the opposing counsel on the "Niles #1" transaction that Defendant Koonce represented that he was the attorney for Joseph Gambino on that deal. The opposing counsel testified credibly that Koonce *negotiated* that deal with him, ostensibly on behalf of Joseph Gambino. Defendant Koonce is, in fact, an attorney. Although Koonce admitted that he had never met Joseph Gambino, his efforts to deny that he held himself out as Mr. Gambino's attorney on the Niles #1 transaction were not credible. The closing statement shows "attorneys' fees" as being paid to Koonce.

Defendant Koonce "refinanced" the Lavergne property even though he did not own it. He listed himself as the owner, submitting an application stating that he had owned the property since 1995, a fact that is demonstrably false. He also presented to the "refinancing" lender a fabricated trust agreement bearing the date of 1962(!), showing himself as the owner of the beneficial interest in the land trust holding the Lavergne property. Further, in order to show the lender proof of an income stream from the property, Koonce presented a series of totally fabricated leases. He also took a forged trustee's deed to Lavergne. It was very apparent from the evidence that Mr. Koonce and Sal DiBenedetto had a relationship that brought them into constant contact with each other. Mr. Koonce did not even pretend to be unaware that the "trustee's deed" to him was forged.

11

Koonce entered an agreement with WW Funding to take an option to purchase the Kedzie property; he admitted he paid nothing for this option. Koonce also submitted an application for an $800,000 loan, on a Boulevard Mortgage Corporation form (a company he owned entirely). On this application he listed *all three* of Joseph Gambino's properties as real estate that he, Koonce, owned (which was, of course, false). There were apparently no limits to what Koonce would do. His ability to fabricate was an equal match to that of Sal DiBenedetto. He presented an incoherent story, with no reasonable explanation for his acts, except fraud. Malice was indeed present in this Defendant.

### Defendant Boulevard Mortgage Corporation

Dennis Koonce owns 100% of this corporation. Defendants Koonce and Sal DiBenedetto used that company in various ways in these transactions. Sal DiBenedetto signed letters on behalf of that company. Defendant Koonce used one of its forms to submit the application for the $800,000 loan, on which he listed all three of Joseph Gambino's properties as properties which he, Koonce, owned. Boulevard Mortgage Corporation was used by Sal DiBenedetto and Koonce to obtain a credit report regarding Joseph Gambino. It issued a "mortgage loan commitment" purportedly for Joseph Gambino. Koonce quitclaimed the Lavergne property to Boulevard Mortgage Corporation, for no consideration. This Defendant was a *de facto* actor whenever it suited the needs of Sal DiBenedetto and Dennis Koonce and, as such, is equally guilty of acting with malice.

### Defendant Title America

This company is likewise owned entirely by Dennis Koonce. Koonce and DiBenedetto used this title company for all the closings except one. Scrutiny thus remained low, and multiple checks from the closings were paid by Title America to parties unrelated

12

C02088

to the transactions. Large checks and wire transfers were issued by Title America to Enzo DiBenedetto and to creditors of Sal DiBenedetto. Sal DiBenedetto characterized some bank accounts held by Title America as being Koonce's personal funds. Title America accepted the forged deeds and other forged documents. As with Boulevard Mortgage Corporation, Koonce and Sal DiBenedetto freely used Title America to effect the fraudulent transactions. Thus Plaintiffs have demonstrated malice on the part of Title America.

<u>Defendant Stephen Wolf</u>

This Defendant is not named in Count II, regarding the Lavergne property, but it is his company, WW Funding, LLC, that ultimately took title to both the Niles and Kedzie properties.

Mr. Wolf was involved in the Gambino property transactions from the outset. It was early on that Sal DiBenedetto showed him a list of all the properties Mr. Gambino owned, together with information as to how much debt, if any, was on each. Money was paid out to Mr. Wolf from the first closing (Niles #1). It was Zipperstein who was the lender on this loan; yet, both Zipperstein's attorney and Sal DiBenedetto testified that Wolf was present at the closing. Wolf denies this.

The second transaction was Kedzie #1. As to this one, Wolf asked Mr. Azran to make the loan. It was agreed in advance that in the event of a "default" by Mr. Gambino, Mr. Wolf, Mr. Zipperstein, and Mr. Azran would each take a one-third ownership interest in the property. Since the forged loan documents created a sale and lease-back transaction, so that Mr. Gambino's land trust no longer held title, Mr. Gambino would not be needed in order for Wolf, Zipperstein and Azran to accomplish this division of ownership. Mr.

C 0 2 0 8 9