Gambino would simply have "failed" to exercise his option to repurchase.* Mr. Wolf was paid $25,000 out of this closing. Again, the attorney for Azran testified that Wolf was at the closing, but Wolf denied this.

When the time for exercise of the option to "repurchase" the Kedzie property came, it was Wolf who purchased it, taking a loan from Plaza Bank to do so. Wolf had a deal in place with Koonce, to give *Koonce* an option to repurchase the property.

A similar arrangement was in place for the Niles property. Wolf had formed WW Funding, LLC by then. That entity took title and gave an option to *Koonce* to repurchase it.

In sum, Mr. Wolf was actively involved with all the transactions that resulted in WW Funding, LLC obtaining title to the Niles and Kedzie properties. That he was involved with Koonce in those transactions is a significant indication of malice.

Further, the court found Mr. Wolf's testimony at trial to be particularly suspect in two respects. First, Mr. Wolf testified that he, personally, had two meetings with Mr. Gambino. The court flatly disbelieves this testimony. Mr. Wolf said he asked Mr. Gambino to meet with him before the Niles #1 transaction and the Kedzie #2 transaction. This was strange testimony, inherently unbelievable and shown to be so. There were also inconsistencies in the versions Mr. Wolf gave at trial and those given at his deposition. Mr. Wolf's testimony that he had personally met with Mr. Gambino lends support to the conclusion that Mr. Wolf in fact had good reason to question his title. All title documents were being transported and delivered by someone (Sal DiBenedetto), a non-attorney, purporting to represent the owner of the property. Surely there was reason to question these documents. It is one thing to say, as the defendants all have argued, that it is common

---

* The loan documents were all forged.

14

for sellers not to appear for closings; but this was a different situation. Here we had someone other than the owner, but NOT an attorney, "standing in" for the owner. That repeated circumstance surely should have put a reasonable person on notice. The court finds that Mr. Wolf attempted to cover up for this by fabricating an account of having met with Mr. Gambino personally.

Second, there was no adequate explanation for a significant deviation from what Mr. Wolf himself described as his typical "structure" for loans. He described the general structure of his loan deals as follows: He, as lender, would take title; he would use the title as collateral to obtain a loan; from the closing he would take a reserve for interest, taxes and insurance; he took a "commitment fee;" and the *borrower* was given an option to repurchase the property by paying back the principal and costs. As to both the Niles and Kedzie properties, however, the option to purchase was given *not* to the man Mr. Wolf professed to believe was the borrower (Mr. Gambino), but to Dennis Koonce. When asked for an explanation, the response was not convincing. Wolf said the option was given to Koonce because Sal DiBenedetto requested it, because Koonce was "credit worthy." He also said he was willing to give the option to *anyone*, as long as someone paid back his "loan." The court finds the fabrication about having actually met with Mr. Gambino, together with this unconvincing explanation as to why Koonce was given an option to purchase the property, as demonstrating, at a minimum, reckless disregard on the part of Mr. Wolf for the validity of the title documents he was handling. The court finds that Mr. Wolf acted with malice.

C02091

### Defendant WW Funding, LLC

It was obvious from the testimony of Mr. Wolf that he used WW Funding, LLC to complete the transactions he had created and to be the title holder for the Niles and Kedzie properties. The slanders of title were thus the acts of WW Funding, LLC as well as they were Mr. Wolf's acts, and WW Funding is, therefore, shown to have acted with malice.

### Defenses

The several defendants put on a unified front in defense. A few themes were repeated in this defense, apparently some directed in support of a simple defense and others in support of affirmative defenses.

The defendants placed great weight on the fact that at one point in time Mr. Gambino did request a deed from the trust to him for all three properties. These deeds were issued, but were later cancelled. Although this fact was repeatedly emphasized, to the court's mind it goes to prove nothing except that by having in his possession such a deed, Mr. Gambino provided the DiBenedettos and Koonce with the tools for their fraud.

Defendants also place great weight on the fact that at the time of all these transactions Mr. Gambino was experiencing serious financial difficulties and received some benefits from what went on with his real estate. That Mr. Gambino was having financial difficulties was admitted by the Plaintiffs at the outset. He owed the IRS back taxes from his business, tax liens were pending, and he owed real estate taxes on some of the properties. The taxes for some years had been sold. The benefits that he received from what the defendants did, the defendants argue, were that the mortgages on the Niles and Lavergne properties were paid off, and sold real estate taxes were redeemed. The only benefit the Plaintiffs will receive from these events, however, comes today, through this court's

C02092

judgment order. But for this suit all the "benefits" from redeeming tax sales and satisfying mortgages would have gone to the defendants, who took and transferred title to Mr. Gambino's property. Defendants' cure for Mr. Gambino's problems was certainly worse than the disease.

Defendants also allude to some "deal" or plan with Mr. Gambino to use his properties to "loan" money to him. They have a scrap of paper with words and figures in Mr. Gambino's handwriting. It appears to sketch out something relating to sale of the three properties and the business. Perhaps it reflects discussions the parties had concerning a potential deal. Mr. Thomas Gambino indicated an awareness that there had been some sort of discussion to this effect among the parties. In his deposition, Mr. Joseph Gambino said there had been ongoing discussions, but there is no signed contract. Several draft proposals were admitted into evidence. The defendants admitted they were never signed. Nor was there proof of any oral contract: no offer, no acceptance, no consideration. Defendants assert that there had to be some sort of deal because Mr. Gambino accepted multiple cash payments from them. Defendants contend that Mr. Gambino knew that all his property was being transferred, made no protest, and accepted the resulting "benefits." But if that were true, there would have been no need for the defendants to rely on forged documents (a total of forty-five forged documents in all). If Mr. Gambino "knew," as was argued, there was never any evidentiary explanation for why all the instruments of title had to be forged, fabricated, and falsely notarized. It is astounding, really, that these people would persist in expecting the court to believe their vacuous story.

17

C02093

In sum, no clear picture of a defense ever emerged from the evidence at this trial. To the extent there *was* any defense, simple or affirmative, it was based primarily on the testimony of Sal and Enzo DiBenedetto, neither of whom was worthy of belief.

### Damages

The court finds that Plaintiffs have suffered actual damages, consisting of the expense of this lawsuit, which was the cost of restoring title to the properties. As indicated earlier, attorneys' fees and costs for an action to quiet title are recognized as damages to be recovered in an action for slander of title. At trial the court indicated that Plaintiffs would be permitted to present a petition for those fees and costs at a later date.

The court determines that punitive damages are warranted here as well. There was fraud and malice on the part of the defendants here. The court determines that an appropriate measure of punitive damages is the value of the three properties taken from the Plaintiffs. The Kedzie property has a value of $1.4 million; and the Niles and Lavergne properties are each valued at $.5 million. Since defendants Sal DiBenedetto, Enzo DiBenedetto, Dennis Koonce, and Boulevard Mortgage Corporation acted against all three properties, the court determines that each of these defendants should be assessed $500,000 in punitive damages. Mr. Wolf and WW Funding, LLC were not involved with the Lavergne property, and their conduct was not as egregious as that of the other Defendants. The court determines that punitive damages in the amount of $175,000 are appropriate as to each of these Defendants.

18

C02094

## COUNTERCLAIMS

### Amended Counterclaim of Defendants Koonce, Boulevard Mortgage, and Title America

The claims of Boulevard Mortgage Corporation in Counts I and II to quiet title and for slander of title as to the Lavergne property fail, for the reason that the court has declared that true title rests with the Plaintiff land trust.

Count III of the Amended counterclaim is a claim by defendants Koonce and Boulevard Mortgage relating to all three of the properties. In this count, Defendants assert that the Plaintiffs have been unjustly enriched by the events that were proven in this case, to the detriment of these defendants. At the close of the evidence, it was argued that Defendant Koonce spent a large sum of money on mortgage payments among other things, and that it is unfair to let that go unrecompensed. The court sees it to the contrary. One who claims that another has been unjustly enriched invokes the power of equity and asks it to find that the opposing party has wrongfully obtained a benefit, or that it would be unconscionable to allow the opposing party to retain the benefit. Certainly, in light of the elaborate fraud perpetrated against Mr. Gambino with regard to his properties, that is not the case here. Mr. Koonce's expenditures were made with the intention of benefiting himself, with Mr. Gambino's property. The risk of being caught was a risk freely taken. The court sees no reason to relieve him of the results.

In Counts III and IV these Defendants plead fraud and intentional interference with a business relationship, respectively. These counts were not proven.

19

C02095

Counterclaim of WW Funding, LLC

This pleading is in two counts, one for the Kedzie property and one for the Niles property. In each count WW Funding seeks a declaration that it is the owner of the subject property, and also seeks reimbursement by the Plaintiffs for the real estate taxes, insurance premium and "carrying costs" paid on each property. It also seeks rent, claiming that Mr. Gambino was allowed to remain in possession of the property and should be required to pay for its use. Like Koonce, WW Funding asserts it would be unfair to allow Mr. Gambino's estate to retain these benefits. The prayer for a declaration of title in favor of WW Funding is, of course, denied. Again, the court finds no unjust enrichment. Mr. Wolf made these payments, as he was fond of saying, "to save the property." But he was saving the property for himself, not for Mr. Gambino. Mr. Gambino's properties were being taken from him by means of falsified, forged instruments of title, passed around by a dubious character. Mr. Wolf and WW Funding's gamble was their own.

ENTRY OF JUDGMENT

Accordingly, IT IS HEREBY ORDERED THAT:

1. Judgment is entered in favor of the Plaintiffs, the Estate of Joseph Gambino and North Star Trust Company, Trustee, and against Boulevard Mortgage Corporation and Washington Mutual Bank on Count I of the Corrected Second Amended Complaint. IT IS HEREBY ADJUDGED AND DECLARED that title to the property commonly known as 3619 North Lavergne Ave., in Chicago, Illinois (PIN # 13-21-230-001-0000) is vested in North Star Trust Company, Trustee, in trust number 13534. All purported instruments of title through which Boulevard Mortgage Corporation and Washington Mutual Bank claim any interest in this property are hereby declared void.

2. Judgment is entered in favor of the Plaintiffs, the Estate of Joseph Gambino and North Star Trust Company, as trustee, and against WW Funding, LLC and Plaza Bank on Count III of the Corrected Second Amended Complaint. IT IS HEREBY ADJUDGED AND DECLARED that title to the property commonly known as 7460 North Milwaukee Avenue, in Niles, Illinois (PIN numbers 10-30-308-016-0000 and 10-30-308-017-0000) is vested in North Star Trust Company, Trustee, in trust no. 23985. All purported instruments of title

C02096

through which WW Funding, LLC and Plaza Bank claim any interest in this property are hereby declared void.

3. Judgment is entered in favor of the Plaintiffs, the Estate of Joseph Gambino and North Star Trust Company, as trustee, and against WW Funding, LLC and Plaza Bank on Count V of the Corrected Second Amended Complaint. IT IS HEREBY ADJUDGED AND DECLARED that title to the property commonly known as 2738-40 North Kedzie Avenue, in Chicago, Illinois (PIN numbers 13-26-407-005-0000 and 13-26-407-007-0000) is vested in North Star Trust Company, Trustee, for trust no. 23994. All purported instruments of title through which WW Funding, LLC and Plaza Bank claim any interest in this property are hereby declared void.

4. The court finds that there is no just cause to delay enforcement or appeal of the judgments entered as to Counts I, III, and V of the Corrected Second Amended Complaint.

5. Plaintiff shall file a petition for attorney's fees and costs as damages under Counts II, IV and VI within twenty-eight days.

6. Judgment is entered against defendants Dennis Koonce, Boulevard Mortgage Corporation and Title America on all counts of their Amended Counterclaim.

7. Judgment is entered against Defendant WW Funding, LLC, on both counts of its counterclaim.

8. Judgment is entered in favor of Defendant Ross Waxman and against the plaintiffs on Counts III, IV, V, and VI of the Corrected Second Amended Complaint.

9. All the plaintiffs' claims against D 21st Century Financial Planners, Inc. are dismissed.

10. Defendants Sal Di Benedetto, Enzo Di Benedetto, Dennis Koonce, and Title America are dismissed as to Counts I, III, and V of the Corrected Second Amended Complaint, and Defendant Wolf is dismissed from Counts III and IV.

11. This cause shall be called for status on the petition for fees on January 10, 2008 at 10:15 a.m.

ENTERED
JUDGE NANCY J. ARNOLD-1732
NOV 30 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

20___
ENTER:
JUDGE NANCY J. ARNOLD

3315 Rev.(4/18/95) CCG-15
Memorandum of Judgment

IN THE CIRCUIT COURT OF
COOK COUNTY, ILLINOIS

JOSEPH M. GAMBINO, Independent
Administrator of the Estate of Joseph J.
Gambino, et al.,

    Plaintiffs,

v.

W. W. FUNDING, LLC, et al.,

    Defendant.



Recorder's Stamp

ENTERED
JUDGE NAN...
DEC 19 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

No. 05 CH 4303

MEMORANDUM OF JUDGMENT

On November 30, 2007, judgment was entered in this court in favor of the plaintiffs, JOSEPH M. GAMBINO, Independent Administrator of the Estate of Joseph J. Gambino, and NORTH STAR TRUST COMPANY as Trustee U/T/A No. 23985, and against defendants WW Funding, LLC, and Plaza Bank, as follows:

"Judgment entered in favor of the plaintiffs... and against WW Funding, LLC and Plaza Bank on Count III of the corrected second amended complaint. IT IS HEREBY ADJUDGED AND DECLARED that title to the property commonly known as 7460 North Milwaukee Avenue, in Niles, Illinois (PINs 10-30-308-016-0000 and 10-30-308-017-0000) is vested in North Star Trust Company, Trustee, in trust number 23985. All purported instruments of title through which WW Funding, LLC and Plaza Bank claim any interest in this property are hereby declared void."

A copy of the legal description of the above adjudged property is attached hereto as Exhibit A.

                                                                       /s/ Judge      Judge's No.

Michael A. Braun
Attorney for Plaintiffs
33 N. Dearborn, Ste. 500
Chicago IL 60602
312/580-0001
Atty No. 26428
\gambino\jdgmt-memMilwaukee

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY

J.H.                                                                                                C 02183

# EXHIBIT A

Legal Description of Adjudged Property (known as "Niles" or "Milwaukee" Property)

Lots 6 and 7 in Block 46 in Hubert Milwaukee Avenue Subdivision, being a subdivision of Lot 1 in resubdivision by Elizabeth Redling of part of Lill and Diversey's Subdivision of part of the Southwest 1/4 of Section 30, Township 41 North, Range 13, East of the Third Principal Meridian, in Cook County, Illinois.

Commonly known as: 7460 N. Milwaukee Ave., Niles IL

PINs: 10-30-308-016-0000 and 10-30-308-017-0000

\gambino\legal-milwaukee



EXHIBIT A

C 02184

# Exhibit 7

Westlaw.

922 N.E.2d 380

Page 1

398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec. 257
(Cite as: 398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec. 257)

H

Appellate Court of Illinois,
First District, Sixth Division.
Joseph M. GAMBINO, Independent Administrator of the Estate of Joseph J. Gambino, and North Star Trust Company, as Trustee u/t/a Nos. 13534, 23985, 23994, Plaintiffs-Appellees, Cross-Appellants and Counter-Defendants,
v.
BOULEVARD MORTGAGE CORPORATION, Title America, Inc., W.W. Funding, L.L.C., Dennis D. Koonce and Stephen Wolf, Defendants and Counter-plaintiffs-Appellants (Washington Mutual Bank, a Federal Association, and Plaza Bank, Defendants-Appellants and Cross-Appellees, and Salvatore DiBenedetto, and Vincenzo DiBenedetto, Defendants-Appellants).
Nos. 1-07-3566, 1-08-0702, 1-08-0746, 1-08-1373, 1-08-1982, 1-08-1983, 1-08-2151, and 1-08-2152.

Dec. 11, 2009.
Rehearing Denied Feb. 24, 2010.

**Background:** Trust and trust beneficiary brought actions against purported purchasers, lenders and title agents to quiet title to three parcels of real estate and to seek damages for slander to title. After the cases were consolidated and following a bench trial, the Circuit Court of Cook County, Nancy J. Arnold, J., entered judgment for trustee and beneficiary, and defendants appealed.

**Holdings:** The Appellate Court, Robert E. Gordon, J., held that:
(1) evidence was sufficient to establish that documents purporting to encumber and transfer the subject properties were forged;
(2) evidence was sufficient to establish that attorney, and title agent and purchaser owned by such attorney, intended to defraud trust and trust beneficiary by the use of forged documents;
(3) evidence was sufficient to establish that trust beneficiary did not authorize or ratify the actions of his nephew, who he believed was a mortgage broker;

(4) evidence was sufficient to establish that attorney, and title agent and purchaser owned by such attorney, participated in the publication of documents that disparaged title;
(5) evidence was sufficient to establish that attorney, purchaser and title agent owned by attorney, investor, and investor's company, acted with malice when documents disparaging title were recorded;
(6) trial court did not abuse its discretion by awarding attorney fees in the form of compensatory damages enhanced by a multiplier of three times the lodestar; and
(7) evidence was sufficient to establish that attorney, purchaser and title agent owned by attorney, investor, and investor's company exhibited malice beyond that necessary to establish the elements of slander of title, as required for an award of punitive damages.

Affirmed.

West Headnotes

**[1] Appeal and Error 30 ⇌893(1)**

30 Appeal and Error
   30XVI Review
      30XVI(F) Trial De Novo
         30k892 Trial De Novo
           30k893 Cases Triable in Appellate Court
              30k893(1) k. In general. Most Cited
On appeal from a bench trial, the question of whether punitive damages are available as a matter of law for a cause of action is reviewed de novo.

**[2] Appeal and Error 30 ⇌1013**

30 Appeal and Error
   30XVI Review
      30XVI(I) Questions of Fact, Verdicts, and Findings
         30XVI(I)3 Findings of Court
           30k1013 k. Amount of recovery. Most Cited Cases
In an appeal of a punitive damages award, the question of whether the facts prove willfulness or other aggravat-

Page 2

922 N.E.2d 380
398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec. 257
(Cite as: 398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec. 257)

ing factors justifying the imposition of punitive damages is a factual determination that is reviewed using the manifest-weight standard.

[3] Appeal and Error 30 ⚖ 1013

30 Appeal and Error
   30XVI Review
      30XVI(I) Questions of Fact, Verdicts, and Findings
         30XVI(I)3 Findings of Court
           30k1013 k. Amount of recovery. Most Cited Cases
A trial court's decision to award punitive damages is reviewed for an abuse of discretion.

[4] Quieting Title 318 ⚖ 1

318 Quieting Title
   318I Right of Action and Defenses
      318k1 k. Nature and scope of remedy. Most Cited Cases

Quieting Title 318 ⚖ 7(1)

318 Quieting Title
   318I Right of Action and Defenses
      318k7 Cloud on Title
         318k7(1) k. In general. Most Cited Cases

Quieting Title 318 ⚖ 27

318 Quieting Title
   318II Proceedings and Relief
      318k27 k. Form of remedy. Most Cited Cases
An action to quiet title in property is an equitable proceeding in which a party seeks to remove a cloud on his title to the property.

[5] Quieting Title 318 ⚖ 7(1)

318 Quieting Title
   318I Right of Action and Defenses
      318k7 Cloud on Title
         318k7(1) k. In general. Most Cited Cases
For purposes of a quiet title action, a "cloud on title" is the semblance of title, either legal or equitable, appearing in some legal form but which is, in fact, unfounded or which it would be inequitable to enforce.

[6] Quieting Title 318 ⚖ 10.1

318 Quieting Title
   318I Right of Action and Defenses
      318k9 Title of Plaintiff
         318k10.1 k. Necessity of having title or interest. Most Cited Cases

Quieting Title 318 ⚖ 10.2

318 Quieting Title
   318I Right of Action and Defenses
      318k9 Title of Plaintiff
         318k10.2 k. Sufficiency in general. Most Cited Cases
It is a fundamental requirement in an action to quiet title or in an action to remove a cloud from a title that the plaintiff must recover on the strength of his own title, although it is not required that a perfect title be established.

[7] Quieting Title 318 ⚖ 10.1

318 Quieting Title
   318I Right of Action and Defenses
      318k9 Title of Plaintiff
         318k10.1 k. Necessity of having title or interest. Most Cited Cases
A plaintiff in a quiet title action cannot claim that there is a cloud on his title, unless he actually has title.

[8] Forgery 181 ⚖ 4

181 Forgery
   181k3 Elements of Offenses
      181k4 k. In general. Most Cited Cases
The essential elements of a forgery are: (1) a false writing or alteration of some instrument in writing; (2) the instrument must be apparently capable of defrauding; and (3) there must be an intent to defraud.

[9] Deeds 120 ⚖ 207

120 Deeds

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

922 N.E.2d 380
Page 3
398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec. 257
(Cite as: 398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec. 257)

120V Evidence
    120k205 Weight and Sufficiency of Evidence
        120k207 k. Execution, existence, and identity. Most Cited Cases

The validity of signatures on a deed of conveyance can be overcome only by clear and convincing evidence from disinterested witnesses.

[10] Trusts 390 ⟶ 262

390 Trusts
    390IV Management and Disposal of Trust Property
        390k245 Actions Between, By, or Against Trustees
            390k262 k. Evidence. Most Cited Cases

Evidence was sufficient to establish, in bench trial of quiet title claim brought by trust and trust beneficiary against purported purchasers, lenders and title agents, that trust held valid title to the three subject properties prior to the disputed transfers; attorney, and title agent and purchaser owned by such attorney, alleged in verified complaint that trust had held title to the properties, trust officer testified that the trust held legal title to the properties under trust agreements, and the deeds purporting to convey the properties to defendant purchasers were trustee's deeds.

[11] Libel and Slander 237 ⟶ 139

237 Libel and Slander
    237V Slander of Property or Title
        237k139 k. Actions. Most Cited Cases

Quieting Title 318 ⟶ 44(4)

318 Quieting Title
    318II Proceedings and Relief
        318k44 Evidence
            318k44(4) k. Sufficiency of evidence of title. Most Cited Cases

Trusts 390 ⟶ 262

390 Trusts
    390IV Management and Disposal of Trust Property
        390k245 Actions Between, By, or Against Trustees
            390k262 k. Evidence. Most Cited Cases

Evidence was sufficient to establish, in bench trial of quiet title and slander of title action brought by trust and trust beneficiary against purported purchasers, lenders and title agents, that the trustee's deeds purporting to convey the three subject properties, and other legal documents in contested transactions, were forged: the bank officers whose signatures purportedly appeared on the trustee's deeds testified that they did not sign the deeds, notary whose seal appeared on the deeds testified that she notarized the deeds without witnessing their execution or having any familiarity with the signatories' signatures, and handwriting expert testified that signatures were forged.

[12] Appeal and Error 30 ⟶ 854(1)

30 Appeal and Error
    30XVI Review
        30XVI(A) Scope, Standards, and Extent, in General
            30k851 Theory and Grounds of Decision of Lower Court
                30k854 Reasons for Decision
                    30k854(1) k. In general. Most Cited

A reviewing court may affirm a trial court's judgment following a bench trial on any basis which appears in the record, regardless of the basis relied upon by the trial court.

[13] Appeal and Error 30 ⟶ 854(1)

30 Appeal and Error
    30XVI Review
        30XVI(A) Scope, Standards, and Extent, in General
            30k851 Theory and Grounds of Decision of Lower Court
                30k854 Reasons for Decision
                    30k854(1) k. In general. Most Cited

In an appeal from a bench trial, the real issue on appeal is not the reasoning of the trial court nor the basis for its decree, but whether its decree was correct.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

922 N.E.2d 380
398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec. 257
(Cite as: 398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec. 257)

[14] Appeal and Error 30 ⇐1008.1(13)

30 Appeal and Error
   30XVI Review
      30XVI(I) Questions of Fact, Verdicts, and Findings
         30XVI(I)3 Findings of Court
           30k1008 Conclusiveness in General
             30k1008.1 In General
                30k1008.1(8) Particular Cases and Questions
                   30k1008.1(13) k. Negligence and torts in general. Most Cited Cases
A trial court's findings as to the elements of forgery, including the determination of an intent to defraud, are reviewed under the manifest-weight standard.

[15] Evidence 157 ⇐573

157 Evidence
   157XII Opinion Evidence
      157XII(F) Effect of Opinion Evidence
         157k573 k. Comparison of handwriting. Most Cited Cases

Libel and Slander 237 ⇐139

237 Libel and Slander
   237V Slander of Property or Title
      237k139 k. Actions. Most Cited Cases

Quieting Title 318 ⇐44(4)

318 Quieting Title
   318II Proceedings and Relief
      318k44 Evidence
         318k44(4) k. Sufficiency of evidence of title. Most Cited Cases

Trusts 390 ⇐262

390 Trusts
   390IV Management and Disposal of Trust Property
      390k245 Actions Between, By, or Against Trustees
         390k262 k. Evidence. Most Cited Cases
Evidence was sufficient to establish, in bench trial of quiet title and slander of title action brought by trust and trust beneficiary against purported purchasers, lenders and title agents, that attorney, and title agent and purchaser owned by such attorney, intended to defraud trust and trust beneficiary by the use of forged documents; handwriting expert testified that beneficiary did not sign the contested documents, there was evidence that the documents involved in the subject real estate transactions were forged, and there was evidence that excessive mortgage escrows, excessive commitment fees, excessive appraisal fees, excessive loan fees, fees to a law firm not involved in the transactions, and fees to unknown people were charged against funds that were supposed to be distributed to trust and/or beneficiary from the closings on the subject properties.

[16] Fraud 184 ⇐50

184 Fraud
   184II Actions
      184II(D) Evidence
         184k50 k. Presumptions and burden of proof. Most Cited Cases

Fraud 184 ⇐58(3)

184 Fraud
   184II Actions
      184II(D) Evidence
         184k58 Weight and Sufficiency
           184k58(3) k. Intent. Most Cited Cases

Fraud 184 ⇐64(2)

184 Fraud
   184II Actions
      184II(F) Trial
         184k64 Questions for Jury
           184k64(2) k. Intent. Most Cited Cases
Intent to defraud is a question of fact, which may be proved by circumstantial evidence and inferred from the facts and circumstances surrounding the transaction.

[17] Principal and Agent 308 ⇐96

308 Principal and Agent
   308III Rights and Liabilities as to Third Persons

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.