922 N.E.2d 380
398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec. 247
(Cite as: 398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec. 247)

Page 47

Case 11-00966   Doc 115-14   Filed 07/08/13   Entered 07/08/13 16:32:46   Desc Exhibit   Page 1 of 9

$10,000 to Gambino. The disbursements on the Lavergne Property were just as bizarre with no funds going to Gambino and $120,000 to Enzo with loan fees over $7,000 and an unexplained disbursement to Harris Bank for $10,000. Further, Wolf, Zippershtein, and Azran, had in place an agreement to share in the ownership of the Kedzie Property in the event Gambino should fail to exercise his option to purchase the property. The trial court's decision to impose punitive damages in this case was neither error as a matter of law, against the manifest weight of the evidence, or an abuse of its discretion. Again, the assessment of punitive damages is highly factual decision that should be a reflection of the fact finder's determination of maliciousness. *Gomez*, 369 Ill.App.3d at 722, 308 Ill.Dec. 124, 861 N.E.2d 189. We cannot disturb the trial court's assessment of punitive damages here.

[76] We note that no defendant has provided us with any authority of whether the trial court's assessment of punitive damages before its calculation of compensatory damages was error. As a result any contention in this regard is waived. 210 Ill.2d R. 341(h)(7). We also were unable to find any authority dictating the reversal of the trial court's order under these circumstances. We also note that the fact that no evidence of defendants' financial status does not require reversal. *Kochan*, 242 Ill.App.3d at 798, 182 Ill.Dec. 814, 610 N.E.2d 683. This court in a decision authored by Justice Cahill recently upheld an award of punitive damages despite the absence of evidence of the defendant's financial status in *Gomez v. The Finishing Co.*, 369 Ill.App.3d 711, 308 Ill.Dec. 124, 861 N.E.2d 189 (2006).

Next, both the Koonce defendants and the Wolf defendants argue that the trial court's award of punitive damages violated their constitutional right to due process.

[77][78] *71 The standard of review for the constitutional question of whether a punitive damages award is excessive in violation of due process is reviewed *de novo*. *Franz*, 352 Ill.App.3d at 1147, 288 Ill.Dec. 669, 818 N.E.2d 357. A constitutional challenge to an award of punitive damages is separate from the common-law challenge addressed above. *Franz*, 352 Ill.App.3d at 1147, 288 Ill.Dec. 669, 818 N.E.2d 357. The constitutional question requires a ***303 **426 court to consider three factors: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties authorized or imposed in comparable cases. *Franz*, 352 Ill.App.3d at 1147, 288 Ill.Dec. 669, 818 N.E.2d 357, citing *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 440, 121 S.Ct. 1678, 1687, 149 L.Ed.2d 674, 689 (2001).

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 116 S.Ct. 1589, 1599, 134 L.Ed.2d 809, 826 (1996). Courts are instructed to consider the following factors when determining reprehensibility: (1) whether the harm caused was physical as opposed to economic; (2) whether the tortious conduct evinced an indifference to or a reckless disregard for the health and safety of others; (3) whether the target of the conduct was financially vulnerable; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Gore*, 517 U.S. at 575, 116 S.Ct. at 1599, 134 L.Ed.2d at 826. "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. at 408, 419, 123 S.Ct. 1513, 1521, 155 L.Ed.2d 585, 602 (2003).

[79] In the case at bar, the evidence presented and highlighted by the trial court's findings, demonstrated the reprehensible nature of the defendants' conduct. As noted, the factors to be considered in determining repre-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

922 N.E.2d 380
398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec.
(Cite as: 398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec.)

Case 11-00966    Doc 115-14    Filed 07/08/13    Entered 07/08/13 16:32:46    Desc
Exhibit    Page 2 of 9

Page 48

hensibility include whether the target of the conduct was financially vulnerable, whether the conduct involved repeated actions and whether the harm was the result of intentional malice, trickery, or deceit. Here, it is undisputed that Gambino was in serious financial debt in the summer of 2002. He owed back taxes to the IRS *72 and overdue real estate taxes. Further, the conduct involved repeated actions. Over 40 legal documents were used in order to take title to the subject properties over the course of six real estate closings. The trial court also found that the harm here was the result of intentional malice, trickery, and deceit. The trial court determined that the Koonce defendants and the Wolf defendants participated in a scheme to take plaintiffs' properties through the use of fraudulent, forged legal documents including forged deeds.

Furthermore, the punitive damages awarded in this case were only a fraction of the damages plaintiffs' suffered as a result of the defendants' conduct. The trial court's imposition of punitive damages in this case did not violate due process.

### 5. Sanctions

We finally come to the final issues on appeal; whether the trial court abused its discretion by denying two Illinois Supreme Court Rule 137 motions for sanctions (155 Ill.2d R. 137) in its May 2, 2008, order. Plaintiffs filed a cross-appeal from the denial of their motion for sanctions against defendants Plaza Bank and Washington Mutual for failing to amend their answer ***304 **427 to plaintiffs' complaint to conform to the proofs of this case. Plaza Bank and Washington Mutual filed their own Rule 137 motion in response to plaintiffs' motion, which was also denied. Plaza Bank and Washington Mutual appeal the denial of their motion for sanctions.

As noted, plaintiffs' complaint alleged that Plaza Bank and Washington Mutual knew or should have known that the trustee's deeds recorded against the subject properties were forged. In response to this allegation both Plaza Bank and Washington Mutual answered that they "lacked knowledge or information sufficient" to form a belief as to the truth of the allegation.

Plaintiffs filed a motion for sanctions against Plaza Bank and Washington Mutual on December 12, 2007, after the trial court's November 30, 2007, order, arguing that Plaza Bank and Washington Mutual had a continuing duty to monitor the accuracy of their answer and that their continued disavowal of the forgeries warranted sanctions.

Plaza Bank and Washington Mutual responded and filed a cross-motion for sanctions, contending that the motion for sanctions filed by plaintiffs themselves was not well-grounded in fact or law.

[80][81] Illinois Supreme Court Rule 137 allows the trial court to award sanctions against parties who filed frivolous pleadings when a pleading has no basis in fact or law. 134 Ill.2d R. 137. An attorney's signature on a pleading, motion or other paper indicates:

> *73 "That to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose." 134 Ill.2d R. 137.

"Rule 137 is intended to prevent counsel from making assertions of fact or law without support." *Lewy v. Koeckritz International, Inc.*, 211 Ill.App.3d 330, 334, 155 Ill.Dec. 848, 570 N.E.2d 361 (1991). Specifically, with respect to a question of law, Rule 137 is intended to provide a sanction when a party asserts a proposition of law which is *contrary* to established precedent. *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill.App.3d 149, 190 Ill.Dec. 208, 621 N.E.2d 77 (1993).

[82][83] In order to avoid sanctions, parties must present objectively reasonable arguments for their view, regardless of whether they are found to be correct. *Shea*, 250 Ill.App.3d at 154, 190 Ill.Dec. 208, 621 N.E.2d 77. In determining whether sanctions are warranted in a particular case, the court must ascertain what was reasonable at the time, and should not engage in hindsight.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

922 N.E.2d 380
398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec. 257
(Cite as: 398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec. 257)

Case 11-00966   Doc 115-14   Filed 07/08/13   Entered 07/08/13 16:32:46   Desc Exhibit   Page 3 of 9

Lowry, 211 Ill.App.3d at 334, 155 Ill.Dec. 848, 570 N.E.2d 361. The determination of whether to impose sanctions under Rule 137 rests with the sound discretion of the trial court; the decision to impose or deny sanctions is entitled to great weight on appeal and will not be disturbed on review absent an abuse of discretion. *In re Estate of Wernick*, 127 Ill.2d 61, 77-78, 129 Ill.Dec. 111, 535 N.E.2d 876 (1989).

[84] The trial court did not abuse its discretion by denying plaintiffs' motion for sanctions. It is quite settled that a pleading is judged at the time that it is filed. *Ambrose v. Thornton Township School Trustees*, 274 Ill.App.3d 676, 685, 211 Ill.Dec. 83, 654 N.E.2d 545 (1995) ("[i]n determining whether sanctions are warranted in a particular case, the court must ascertain what was reasonable at the time, and should not engage in hindsight"). Further, there was evidence in the record that ***305 **428 if believed would have validated Plaza Bank and Washington Mutual's answer. Evidence was presented to the trial court that Gambino ratified and/or authorized the transactions; of course, this evidence was rejected by the trial court, but it cannot be used as a basis to sanction a party on the basis of a pleading filed long before the trial court's judgment.

[85] Further, the trial court did not abuse its discretion by denying Plaza Bank and Washington Mutual's motion for sanctions. Although the trial court made no specific findings as to the denial of this motion for sanctions, the trial court could have found that plaintiffs' motion for sanctions was not made for an improper purpose and was a good-faith argument for the extension, modification, or reversal of existing law to impose a duty on litigants a continuing duty to amend their pleadings as facts come to light that would prove their pleadings mistaken.

## *74 CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County in its entirety.

Affirmed.

CAHILL, P.J., and McBRIDE, J., concur.

Ill.App. 1 Dist.,2009.
Gambino v. Boulevard Mortg. Corp.
398 Ill.App.3d 21, 922 N.E.2d 380, 337 Ill.Dec. 257

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit 8

ASSIGNMENT OF
MORTGAGE

For Value Received, PLAZA BANK ("Assignor"), whose address is 7460 West Irving Park Road, Norridge, Illinois 60706, does hereby grant, sell, assign, transfer and convey unto ATTORNEYS' TITLE GUARANTY FUND, INC. ("Assignee"), whose address is 2408 Windsor Place, Champaign, IL 61820, a certain Mortgage dated June 18, 2004 signed and delivered by W. W. FUNDING, LLC, a Limited Liability Company, to and in favor of Assignor, upon the following described property situated in Cook County, Illinois:

> Lots 6 and 7 in Block 46 in Hulbert Milwaukee Avenue Subdivision, being a subdivision of Lot 1 in Resubdivision by Elizabeth Redling of Par of Lill and Diversey's Subdivision of part of the Southwest ¼ of Section 30, Township 41 North, Range 13 East of the Third Principal Meridian, in Cook County, Illinois.
>
> Property Index Nos. 10-30-308-016-0000 and 10-30-308-017-0000
>
> Property Address: 7460 North Milwaukee Avenue, Niles, Illinois 60714

The Mortgage was given to secure payment of up to a maximum of One Million Four Hundred Forty-Five Thousand Dollars ($1,445,000) which Mortgage was recorded July 8, 2004 as Document No. 04190005014 in the Office of the Recorder of Deeds of Cook County, State of Illinois. The Mortgage is assigned to Assignee, together with the Note and any guarantees or sureties, and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under the Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successors, and assigns, forever, subject only to the terms and conditions of the Mortgage.

IN WITNESS WHEREOF, the Assignor has signed this Assignment of Mortgage on this 22nd day of August 2008

PLAZA BANK

By: _____
An Authorized Representative

State of ILLINOIS )
            ) SS
County of COOK )

This instrument was acknowledged before me on the 22 day of AUGUST, 2008 by ROBERT C. HUBBEHARD, as PRESIDENT of Plaza Bank.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
DENISE M RODRIGUEZ
COMMISSION EXPIRES 07/13/10

This form was prepared by and, after recording,
Return to:
Michael K. Brandt
Attorneys' Title Guaranty Fund, Inc.
2408 Windsor Place
P. O. Box 9136
Champaign, IL 61826-9136
Tel: 217.359.2000

Claim No. 05-187

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $436,819.94 | 06-18-2007 | 06-18-2009 | 11144491 | 160 / 92 | | JTM | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** W. W. Funding, L.L.C. (TIN: 56-2429523)
2241 W. Howard Street
Chicago, IL 60645

**Lender:** PLAZA BANK
7460 W. IRVING PARK ROAD
NORRIDGE, IL 60706

**Principal Amount: $436,819.94** **Initial Rate: 9.250%** **Date of Note: June 18, 2007**

**PROMISE TO PAY.** W. W. Funding, L.L.C. ("Borrower") promises to pay to PLAZA BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Hundred Thirty-six Thousand Eight Hundred Nineteen & 94/100 Dollars ($436,819.94), together with interest on the unpaid principal balance from June 18, 2007, until paid in full.

**PAYMENT.** Borrower will pay this loan in one principal payment of $436,819.94 plus interest on June 18, 2009. This payment due on June 18, 2009, will be for all principal and all accrued interest not yet paid. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 18, 2007, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is Lender's Prime Rate (the "Index"). This is the rate Lender charges, or would charge, on 90-day unsecured loans to the most creditworthy corporate customers. This rate may or may not be the lowest rate available from Lender at any given time. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each time the prime interest rate changes. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 8.250% per annum. The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 1.000 percentage point over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 9.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be less than 6.250% per annum or more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: PLAZA BANK, 7460 W. IRVING PARK ROAD, NORRIDGE, IL 60706.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

Document    Page 5 of 10
Case 11-00966    Doc 115-14    Filed 07/08/13    Entered 07/08/13 16:32:46    Desc
Exhibit    Page 8 of 9
PROMISSORY NOTE
(Continued)
Loan No: 1114111                                                                                  Page 2

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Illinois.

CONFESSION OF JUDGMENT. Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

COLLATERAL. Borrower acknowledges this Note is secured by a First Mortgage and Assignment of Rents dated June 18, 2004 and recorded July 8, 2004 with the Cook County Recorder as documents 0419005014 and 0419005015, respectively, on real property commonly known as 7460 N. Milwaukee Avenue, Chicago, Illinois 60714; a Second Mortgage and Assignment of Rents dated June 18, 2004 and recorded November 23, 2004 with the Cook County Recorder as documents 0432832004 and 0432832005, respectively, on real property commonly known as 2740 N. Kedzie Avenue, Chicago, Illinois 60647 .

EPA RESERVE ACCOUNT. Maintain a deposit account in the amount of $45,000.00, to be disbursed from the closing of this transaction and deposited with Lender, which shall be held by Lender in an interest bearing account and disbursed as follows: Upon the receipt of a No Further Remediation Letter issued by the State of Illinois in connection with the remediation and corrective action to be taken with respect to the real estate commonly known as 7460 N. Milwaukee, Niles, Illinois as identified in the Phase I environmental assessment issued by Aspen Environmental, Inc., dated June 8, 2004, and receipt of a sworn owners statement, sworn contractors statement and corresponding final waivers of lien with respect to the aforementioned remediation and corrective action, Lender shall disburse the funds on deposit at the direction of Borrower, it being understood and agreed that Lender shall be under no obligation to make more than one disbursement, and that the disbursement is conditioned upon its receipt of the aforementioned documents. In the event Borrower fails to take the necessary steps to conduct the aforementioned remediation and corrective action, Lender, at its option, but without any obligation to do so, may exercise all remedies available to it under the terms hereof and the mortgage on the real estate commonly known as 7460 N. Milwaukee, Niles, Illinois, and reimburse itself from the funds on deposit for any advances made to perform the aforementioned remediation and corrective action.

ORIGINAL NOTE. This Note is a renewal of a Promissory Note initially granted by Plaza Bank to borrower on June 18, 2004 in the original principal amount of $445,000.00, which is being increased to $445,500.00 by this Renewal Note dated June 18, 2007.

PRIOR NOTE. Promissory Note from W.W. Funding, L.L.C. to Plaza Bank dated June 18, 2006 in the principal amount of $436,319.94.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: PLAZA BANK, 7460 W. IRVING PARK ROAD, NORRIDGE, IL 60706.

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

ILLINOIS INSURANCE NOTICE. Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

**PROMISSORY NOTE**
Loan No: 11144491                           (Continued)                                    Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

W. W. FUNDING, L.L.C.

By: _____
    Ross Waxman, Member of W. W. Funding, L.L.C.

WOLF REAL ESTATE PARTNERSHIP, L.P., Member of W. W. Funding, L.L.C.

By: _____
    Stephen A. Wolf

LASER PRO Lending, Ver. 5.35.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved.