# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 7** |
| | ) | **Case No. 11-B-00701** |
| **STEPHEN A. WOLF,** | ) | **Hon. John H. Squires** |
| | ) | **Room 680** |
| Debtor. | ) | |
| _____ | ) | |
| **ATTORNEY'S TITLE GUARANTY** | ) | |
| **FUND, INC.** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Adv.Pro.No. 11-A-00966** |
| **STEPHEN A. WOLF,** | ) | |
| | ) | |
| Defendant. | ) | |

## DEBTOR/DEFENDANT'S ANSWER TO COUNTS I AND II OF PLAINTIFF'S THIRD AMENDED COMPLAINT SEEKING A DETERMINATION OF THE DISCHARGEABILITY OF A DEBT

NOW COMES, Debtor/Defendant, Stephen A. Wolf, ("Defendant" or "Wolf"), by his attorney Ariel Weissberg of Weissberg and Associates, Ltd., and, as his Answer to Counts I and II of Plaintiff's *Third Amended Complaint Seeking a Determination of the Dischargeability of a Debt* ("Third Amended Complaint") (Doc. 53), states as follows:

### PARTIES AND JURISDICTION

1. ATG is an Illinois corporation with its principal place of business in Chicago, Illinois. ATG brings this action on its own behalf and as assignee of Plaza Bank.

**ANSWER:**

Defendant admits that ATG is an Illinois corporation with its principal place of business in Chicago, Illinois. Defendant, having insufficient knowledge or information to form a belief as to the truth of the balance of averments in paragraph 1 of the Third Amended Complaint, neither

1

admits nor denies the balance of allegations of paragraph 1 of the Third Amended Complaint, and demands strict proof thereof.

2.        ATG is in the business, *inter alia*, of providing owners' title insurance policies to purchasers of real estate and mortgagee title insurance policies to lenders making loans for the purchase of real estate who secure those loans by a mortgage on the real estate. ATG brings this action (a) individually; (b) pursuant to a written assignment to ATG of Plaza Bank's interest in the loan and mortgage, respectively, the Bank made to, and received from, Wolf's company; and (c) for the fraud Wolf committed against ATG and Plaza Bank, as detailed below.

**ANSWER:**

Defendant admits that ATG is bringing this action predicated upon the allegations stated, but denies that Defendant committed fraud against ATG or Plaza Bank.

Defendant, having insufficient knowledge or information to form a belief as to the truth of the balance of averments in paragraph 2 of the Third Amended Complaint, neither admits nor denies the balance of allegations of paragraph 2 of the Third Amended Complaint, and demands strict proof thereof.

3.        Upon information and belief, Wolf is an individual domiciled at 2164 Second Street, Northbrook, Illinois.

**ANSWER:**

Defendant admits the allegations contained in Paragraph 3 of the Third Amended Complaint.

4.        On January 10, 2011, Wolf filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, thereby commencing Case No. 11-00701 (the "Case").

**ANSWER:**

Defendant admits the allegations contained in Paragraph 4 of the Third Amended Complaint.

5.    This Third Amended Complaint alleges claims under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

**ANSWER:**

Defendant denies that Plaintiff properly pleads any claims for relief in Counts I and II, but admits the remaining allegations contained in Paragraph 5 of the Third Amended Complaint.

6.    This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 1334(b), applicable rules of this Court and other applicable orders of the United States District Court for the Northern District of Illinois.

**ANSWER:**

Defendant admits the allegations contained in Paragraph 6 of the Third Amended Complaint.

7.    Venue is proper in this District because Wolf filed his Case in this District and is domiciled in this District.

**ANSWER:**

Defendant admits the allegations contained in Paragraph 7 of the Third Amended Complaint.

## COMMON FACTS

**A.    The Niles Property.**

8.    In 2002, an individual named Joseph Gambino ("Gambino") owned the beneficial interest of certain property held in a land trust and located at 7460 North Milwaukee Avenue,

Niles, Illinois (the "Niles Property"). North Star Trust Company ("North Star") was the trustee of that land trust. Gambino also owned a motor vehicle transmission repair business, which was located on the Niles Property, and at least two other properties (both of which were also held in a land trust). In 2002, Gambino was approximately 69 years old.

**ANSWER**:

Defendant, having insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 8 of the Third Amended Complaint, neither admits nor denies the allegations of paragraph 8 of the Third Amended Complaint, and demands strict proof thereof.

9. In and around October of 2002, Gambino had discussions with his nephew, Salvatore DiBenedetto ("DiBenedetto"), about Gambino's financial difficulties, which included overdue payroll and property taxes.

**ANSWER**:

Defendant, having insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 9 of the Third Amended Complaint, neither admits nor denies the allegations of paragraph 9 of the Third Amended Complaint, and demands strict proof thereof.

10. In the fall of 2002, DiBenedetto and Wolf discussed Gambino's financial distress and Gambino's need to raise money. Wolf then spoke to one of his associates, an individual named Reuben Zippershtein ("Zippershtein"), about Gambino's situation. Zippershtein agreed to loan Gambino $200,000 for one year, secured by a mortgage on the Niles Property.

**ANSWER**:

Defendant denies the allegations contained in paragraph 10 of the Third Amended Complaint.

**B.     The December 2002 Transaction.**

11.     On or about December 20, 2002, a "closing" occurred regarding the Niles Property at Zippershtein's office. Wolf was present at this closing, but Gambino was not. At the closing, a trustee's deed was issued purportedly conveying title to the Niles Property from the North Star land trust to Gambino personally, but this deed was forged and Wolf knew it was forged. Also at the closing, varying disbursements were made from the loan proceeds. Wolf received a "commitment fee" of $5,250, and Wolf's son, Adam Wolf, received a "commitment fee" of $4,000, although they did nothing to warrant these "fees." Zippershtein, who made the loan, received a commitment fee of $15,750.

**ANSWER**:

Defendant denies that Wolf was present at this "closing" and denies that Wolf knew the referenced trustee's deed was forged. Defendant admits that he received a "commitment fee" of $5,250.

Defendant, having insufficient knowledge or information to form a belief as to the truth of the balance of these averments in paragraph 11 of the Third Amended Complaint, neither admits nor denies the balance of the allegations of paragraph 11 of the Third Amended Complaint, and demands strict proof thereof.

12.     The "closing" in December 2002, also allowed Zippershtein to record a $200,000 mortgage against the Niles Property.

**ANSWER**:

Defendant, having insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 12 of the Third Amended Complaint, neither admits nor denies the allegations of paragraph 12 of the Third Amended Complaint, and demands strict proof thereof.

5

13.    In actuality, Gambino had not approved any of the transactions purportedly taking place at the December 2002 closing.

**ANSWER**:

Defendant, having insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 13 of the Third Amended Complaint, neither admits nor denies the allegations of paragraph 13 of the Third Amended Complaint, and demands strict proof thereof.

**C.    The June 2004 Transaction.**

14.    In or around January of 2004, an individual named Stephen Fritzshall ("Fritzshall"), who was Zippershtein's attorney, contacted Gambino and demanded repayment of the $200,000 "loan" Zippershtein had made to Gambino, which loan had been secured by a mortgage on the Niles Property. On January 14, 2004, Gambino told Fritzshall that he was not aware that a mortgage had been placed on the Niles Property, Gambino denied that he had entered into a loan agreement with Zippershtein, and Gambino asserted that North Star still owned title to the Niles Property.

**ANSWER**:

Defendant, having insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 14 of the Third Amended Complaint, neither admits nor denies the allegations of paragraph 14 of the Third Amended Complaint, and demands strict proof thereof.

15.    Thereafter, in early 2004, Zippershtein filed a lawsuit in the Circuit Court of Cook County, Illinois, seeking to foreclose his alleged mortgage on the Niles Property.  Zippershtein thereafter voluntarily dismissed his action, with the agreed order of dismissal stating that the "debt at issue was paid in full."

**ANSWER**:

Defendant, having insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 15 of the Third Amended Complaint, neither admits nor denies the allegations of paragraph 15 of the Third Amended Complaint, and demands strict proof thereof.

16.     In the interim, Wolf, DiBenedetto, Zippershtein and others engaged in a second fraudulent transaction to "pay off" Zippershtein's "loan," enrich themselves further, and continue to deprive Gambino of the Niles Property. This second scheme culminated on or about June 18, 2004, when a second "closing" took place involving the Niles Property where Gambino "sold" the Property. In this transaction, an entity called W.W. Funding, LLC ("WW Funding"), an entity Wolf controlled, purportedly purchased the Niles Property from Gambino and paid off the Zippershtein loan, and WW Funding then granted an individual named Dennis Koonce ("Koonce") an option to repurchase the Niles property for $230,000 from WW Funding. In addition, this second fraudulent scheme permitted WW Funding/Wolf and others to obtain money from the sale proceeds.

**ANSWER**:

Defendant denies the allegations contained in paragraph 16 of the Third Amended Complaint.

17.     As part of this June 2004 closing, Gambino purportedly signed documents, including a deed, allowing WW Funding to purchase the Niles Property and granting Koonce the option to repurchase it, but Gambino's signatures on these documents were forged and Wolf knew that the signatures were forged.

**ANSWER**:

Defendant admits that at a June 2004 closing, Gambino purportedly signed documents,

including a deed, allowing WW Funding to purchase the Niles Property and granting Koonce the

option to repurchase it, but Defendant denies the remaining allegations contained in paragraph 17

of the Third Amended Complaint.

18.     To "purchase" the Niles Property and to allow his co-schemers to obtain money

from the transaction, Wolf caused WW Funding to borrow $445,000 from Plaza Bank in June

2004, even though Zippershtein was only owed about $231,000.

**ANSWER**:

Defendant denies the allegations contained in paragraph 18 of the Third Amended

Complaint.

19.     In connection with this loan from Plaza Bank, Wolf caused WW Funding to sign

a Promissory Note in or about June 2004. (The Promissory Note was renewed in June 2007, and

a copy of the new Note is attached hereto as Exhibit 1.)

**ANSWER**:

Defendant admits that WW Funding executed and delivered a Promissory Note in or

about June 2004 to Plaza Bank.

20.     To induce Plaza Bank to make the loan, in or about June 2004, Wolf signed a

Commercial Guaranty in favor of the Bank where he represented the following to Plaza Bank:

"no litigation, claim, investigation, administrative proceeding or similar action (including those

for unpaid taxes) against [Wolf] is pending or threatened. . . " (A copy of Wolf's Commercial

Guaranty is attached as Exhibit 2). This representation was false when made by Wolf, and Wolf

knew the representation was false when made, since in January 2004, Gambino denied that he

entered into the loan agreement with Zippershtein and had asserted that North Star still owned

the Niles Property, Wolf knew about Gambino's denial and his assertion, and Wolf knew that

Gambino had claims against Wolf for defrauding Gambino out of title to the Niles Property. Plaza Bank, however, reasonably relied on Wolf's representation in the Commercial Guaranty and made the $445,000 loan to WW Funding in June 2004.

**ANSWER**:

Defendant admits that on or about June 2004, Defendant signed a Commercial Guaranty in favor of Plaza Bank which stated: "no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against . . . is pending or threatened. . . ". Defendant denies the remaining allegations contained in paragraph 20 of the Third Amended Complaint.

21.     To also induce Plaza Bank to make the loan to WW Funding, Wolf agreed to allow Plaza Bank to record a Mortgage against the Niles Property to secure its loan to WW Funding. The Mortgage was dated June 18, 2004, and was recorded July 8, 2004, in Cook County, Illinois, as document number 0419005014, and a copy is attached hereto as Exhibit 3. The Mortgage was signed by Wolf on or about June 18, 2004, and in it he represents that WW Funding: "holds good and marketable title of record to the [Niles] Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy . . ." (Ex. 3 at page 5). This representation by Wolf to Plaza Bank was false, and Wolf knew this representation was false when it was made by Wolf in June 2004, because Wolf knew that WW Funding did not hold good and marketable title to the Niles Property because Gambino had not agreed to transfer title to WW Funding. Plaza Bank, however, reasonably relied on Wolf's representation in the Mortgage and made the $445,000 loan to WW Funding in June 2004.

**ANSWER**:

9

Defendant admits that a Mortgage dated June 18, 2004 was executed and delivered to Plaza Bank, and was recorded July 8, 2004, in Cook County, Illinois, as document number 0419005014, but denies the remaining allegations contained in paragraph 21 of the Third Amended Complaint.

22.     Also in connection with inducing Plaza Bank to make the $445,000 loan to WW Funding, Wolf represented in the Commercial Guaranty that he would "perform Borrower's [WW Funding's] obligations under the Note and Related Documents [which included the Mortgage]." (Ex. 2 at first paragraph). By virtue of his agreement to perform the obligations of WW Funding, Wolf made the further representation in the Mortgage that he: "warrants . . . title to the [Niles] Property against lawful claims of all persons." (Ex. 3 at Page 5). Pursuant to 765 ILCS § 5/11, this representation means that Wolf is warranting that WW Funding has clear and indefeasible title to the Niles Property. However, this representation was false when made by Wolf, and Wolf knew the representation was false when made, since Gambino/North Star was the true owner of the Niles Property. Plaza Bank also reasonably relied on this representation made by Wolf in the Mortgage and made the $445,000 loan to WW Funding in June 2004.

**ANSWER**:

Defendant denies that Plaintiff has accurately quoted the Commercial Guaranty. Wolf, having insufficient knowledge or information to form a belief as to what Plaza Bank relied upon in granting credit to WW Funding, neither admits nor denies this allegation and demands strict proof thereof. Wolf denies the remaining allegations contained in paragraph 22 of the Third Amended Complaint.

23.     To further induce Plaza Bank to make the $445,000 loan, in or about June 2004, Wolf requested ATG to issue a mortgagee title insurance policy in the amount of $445,000 in

10

favor of Plaza Bank. At the time of this request, Wolf did not advise ATG that: (a) WW Funding was obtaining title to the Niles Property pursuant to a forged deed and was not obtaining clear and indefeasible title to the Property; (b) Wolf was participating in a scheme that would allow Wolf/WW Funding and his co-conspirators to obtain money and "fees" out of the $445,000 loan, although the debt against the Niles Property from Zippershtein's loan was only about $231,000 on June 4, 2014; and (c) Wolf was participating in a fraudulent scheme with DiBenedetto and others to deprive Gambino of the Niles Property. These omissions were material, and ATG reasonably relied upon these omissions and issued the Mortgagee Title Insurance Policy to Plaza Bank; and this in turn, allowed Plaza Bank to make the $445,000 loan to WW Funding. (A copy of this Policy is attached as Exhibit 4.).

**ANSWER**:

Defendant denies the allegations contained in paragraph 23 of the Third Amended Complaint.

24    Also in connection with the fraudulent acquisition of the Niles Property, Wolf requested that ATG issue an owner's title insurance policy in favor of WW Funding. To induce ATG to issue this policy, Wolf omitted to advise ATG of the same facts set forth in paragraph 23 that Wolf omitted when he asked ATG to issue the Mortgagee Title Insurance Policy. ATG reasonably relied upon these material omissions and issued an Owner's Title Insurance Policy to WW Funding, which would require ATG to defend WW Funding if some person or entity challenged WW Funding's title to the Niles Property. (A copy of the Owner's Title Insurance Policy is attached as Exhibit 5.)

**ANSWER**:

Defendant denies the allegations contained in paragraph 24 of the Third Amended

Complaint.

25.     But for ATG issuing title insurance, Plaza Bank would not have loaned $445,000 to WW Funding to "purchase" the Niles Property, and WW Funding would not have been able to complete the June 2004 transaction.

**ANSWER**:

Defendant, having insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 25 of the Third Amended Complaint, neither admits nor denies the allegations of paragraph 25 of the Third Amended Complaint, and demands strict proof thereof.

26.     The "closing" on this second transaction relating to the Niles Property occurred on or about July 18, 2004. At the closing, a forged Warranty Deed purportedly from Gambino conveyed title to the Niles Property to WW Funding, and WW Funding, by Wolf, executed a Mortgage (Ex. 3) in favor of Plaza Bank giving the Bank a lien on the Niles Property. Wolf knew that this Deed allegedly from Gambino was forged, but he did not advise Plaza Bank of the forgery and instead accepted the $445,000 loan proceeds; nor did Wolf advise ATG of the forgery before ATG issued the Owner and Mortgagee Title Insurance Policies (Exs. 4 and 5). From the $445,000, Zippershtein received $231,680.08 (purportedly to pay off his mortgage) and Wolf/WW Funding received $135,171.38 В although it was the purported purchaser of the Niles Property.  Other distributions were made from the remaining loan proceeds, but Gambino, as the alleged seller, did not receive anything from the alleged "sale" of the Niles Property.

**ANSWER:**

Defendant admits that a closing on this second transaction relating to the Niles Property occurred on or about July 18, 2004. Defendant admits that a Warranty Deed purportedly from Gambino conveyed title to the Niles Property to WW Funding Defendant admits that WW

Funding received $135,171.38 from the closing. Defendant denies that he knew that the Deed allegedly from Gambino was forged. Defendant admits that he did not advise Plaza Bank of any forgery nor did Wolf advise ATG of any forgery before ATG issued the Owner and Mortgagee Title Insurance Policies because he was unaware of any forgery. Defendant admits that Plaza Bank disbursed $445,000 in loan proceeds. Defendant denies that his signature appears on the Mortgage. Defendant admits that other distributions were made from the remaining loan proceeds

Defendant, having insufficient knowledge or information to form a belief as to the truth of the balance of the averments in paragraph 26 of the Third Amended Complaint, neither admits nor denies the balance of the allegations of paragraph 26 of the Third Amended Complaint, and demands strict proof thereof.

27.     As with the December 2002 closing, the June 2004 closing was a sham. Gambino did not agree to sell the Niles Property to WW Funding; Gambino did not agree to give Koonce an option to purchase the Property; and Gambino's signature on the Warranty Deed conveying the Niles Property to WW Funding was forged, as were the other documents necessary for the transaction to close. Wolf knew these facts in June 2004, at the time of the closing.

**ANSWER**:

Defendant admits that a closing on this second transaction relating to the Niles Property occurred on or about July 18, 2004. Defendant admits that a Warranty Deed purportedly from Gambino conveyed title to the Niles Property to WW Funding. Defendant admits that WW Funding received $135,171.38 from the closing. Defendant denies that he "knew these facts in June 2004, at the time of the closing", in part because the "facts" are not enumerated. Defendant denies that his signature appears on the Mortgage.

13

Defendant, having insufficient knowledge or information to form a belief as to the truth of this balance of the averments in paragraph 27 of the Third Amended Complaint, neither admits nor denies the balance of the allegations of paragraph 27 of the Third Amended Complaint, and demands strict proof thereof.

### D.    Gambino and North Star File Suit.

28.    In March 2005, after finding out that they had been defrauded by Wolf and his co-schemers, Gambino and North Star filed suit in the Circuit Court of Cook County, Illinois, to quiet title to the Niles Property and seek compensatory and punitive damages for slander of title. The suit was styled *Gambino v. WW Funding, LLC, et al.*, Case No. 05 CH 4303 (the "Litigation").

**ANSWER**:

Defendant denies defrauding Gambino and North Star and denies having any "co-schemers". Defendant admits that Gambino and North Star filed suit in the Circuit Court of Cook County, Illinois styled *Gambino v. WW Funding, LLC, et al.*, Case No. 05 CH 4303.

29.    The Litigation was not limited to the Niles Property. Gambino and North Star also sought to quiet title to, and obtain damages relating to, two other pieces of property. There were numerous defendants in the Litigation, including WW Funding, Wolf, Plaza Bank, DiBenedetto and Koonce. Many of the defendants overlapped with respect to the other properties at issue, and Gambino generally alleged that he had been the victim of a scheme designed to steal title to his real estate.

**ANSWER**:

Defendant admits "The Litigation was not limited to the Niles Property. Gambino and

North Star also sought to quiet title to, and obtain damages relating to, two other pieces of property. There were numerous defendants in the Litigation, including WW Funding, Wolf, Plaza Bank, DiBenedetto and Koonce." Defendant denies the balance of the allegations contained in paragraph 29 of the Third Amended Complaint.

30.     In or about September 2005, Wolf, pursuant to the Owner's Title Insurance Policy (Ex. 5), tendered the defense of WW Funding in the Litigation to ATG and provided ATG with a copy of the Complaint. Plaza Bank did the same under the Mortgagee Title Insurance Policy (Ex. 4). Wolf did not, however, tell ATG that: (a) WW Funding had acquired title to the Niles Property pursuant to a forged Warranty Deed; (b) the mortgage lien in the Niles Property was invalid; (c) WW Funding had received more than $135,000 from the closing although it was the purchaser of the Niles Property; (d) Wolf and the other defendants were involved in a scheme to deprive Gambino of the Niles Property and other real estate he owned; and (e) the allegations in the Complaint were generally accurate. As a result of Wolf's omissions, which ATG reasonably relied upon, ATG defended WW Funding and Plaza Bank in the Litigation.

**ANSWER**:

The Defendant admits that he tendered the defense of WW Funding in the Litigation to ATG and provided ATG with a copy of the Complaint, and that Plaza Bank did the same under the Mortgagee Title Insurance Policy.  The Defendant admits that he did not **tell** ATG that: (a) WW Funding had acquired title to the Niles Property pursuant to a forged Warranty Deed; (b) the mortgage lien in the Niles Property was invalid; (c) WW Funding had received more than $135,000 from the closing although it was the purchaser of the Niles Property; (d) Wolf and the other defendants were involved in a scheme to deprive Gambino of the Niles Property and other real estate he owned; and (e) the allegations in the Complaint were generally accurate.  The

Defendant denies that (a) WW Funding had intentionally acquired title to the Niles Property pursuant to a forged Warranty Deed; (b) denies that he had any knowledge the mortgage lien in the Niles Property was invalid; (c) denies that Defendant was involved in a scheme to deprive Gambino of the Niles Property and other real estate he owned; and (d) denies that he had any knowledge or that the allegations in the Complaint against the Defendant were generally accurate.

31.     The Litigation proceeded through discovery and several amended Complaints were filed. After each amended Complaint, Wolf failed to advise ATG that the allegations in the amended Complaint were essentially accurate and that Wolf had participated in a fraudulent scheme to allow WW Funding to obtain title to the Niles Property and to receive more than $135,000 from the sale proceeds as the buyer of the Property by participating in the fraudulent scheme outlined in the Complaints. Instead, Wolf remained silent, and ATG paid legal fees and costs totaling $260,424.26 defending Plaza Bank and WW Funding in the Litigation.

**ANSWER**:

Defendant admits that he never told ATG that the allegations in the amended Complaint were essentially accurate and that Wolf had participated in a fraudulent scheme to allow WW Funding to obtain title to the Niles Property and to receive more than $135,000 from the sale proceeds as the buyer of the Property by participating in the fraudulent scheme outlined in the Complaints, but further denies that the allegations in the amended Complaint were accurate and denies that Defendant  had participated in a fraudulent scheme to allow WW Funding to obtain title to the Niles Property and to receive more than $135,000 from the sale proceeds as the buyer of the Property by participating in the fraudulent scheme outlined in the Complaints. Defendant Defendant, has insufficient knowledge or information to form a belief as to the truth of the

averment that ATG paid legal fees costs totaling $260,424.26 defending Plaza Bank and WW Funding in the Litigation, neither admits nor denies this allegation, and demands strict proof thereof.

Defendant denies the remaining allegations contained in paragraph 31 of the Third Amended Complaint.

32.    The Litigation went to trial in the fall of 2007. On November 30, 2007, Judge Nancy J. Arnold issued a 21-page Finding of Fact and Judgment After Trial, a copy of which is attached as Exhibit 6 hereto. ATG expressly adopts and incorporates the findings contained in Exhibit 6.

**ANSWER**:

Defendant admits the allegations contained in paragraph 32 of the Third Amended Complaint.

33.    Judge Arnold granted substantially all of the relief that Gambino and North Star requested. Specifically, she found that WW Funding's ownership of the Niles Property and Plaza Bank's Mortgage on the Niles Property were obtained by the fraudulent scheme in which Wolf participated.

**ANSWER**:

Defendant denies that Plaintiff is accurately quoting or characterizing the Finding of Fact and Judgment After Trial, and denies the allegations contained in paragraph 33 of the Third Amended Complaint.

34.    Judge Arnold found that Gambino and North Star's "proof was overwhelming" as to the fraud committed by Wolf (and the other defendants in the Litigation) to deprive Gambino of title to the Niles Property (and other parcels of real estate).

17

**ANSWER**:

Defendant denies that Plaintiff is accurately quoting or characterizing the Finding of Fact and Judgment After Trial, and denies the allegations contained in paragraph 34 of the Third Amended Complaint.

35.     At the trial, Wolf testified that he had met with Gambino to discuss WW Funding's purchase of the Niles Property, and that he had no reason to suspect Gambino's signatures had been forged. Judge Arnold held that she "flatly disbelieve[d] this testimony," and she further found that it was "strange testimony, inherently unbelievable and shown to be so."

**ANSWER**:

Defendant denies that Plaintiff is accurately quoting his testimony at trial, denies he is accurately quoting the Finding of Fact and Judgment After Trial, and denies the allegations contained in paragraph 35 of the Third Amended Complaint.

36.     Judge Arnold further found that Wolf's testimony undercut Wolf's own defense since neither Gambino nor his attorney appeared at the closing, whereas it was customary that either the seller or his attorney would have been present.

**ANSWER**:

Defendant denies that Plaintiff is accurately quoting or characterizing the Finding of Fact and Judgment After Trial, and denies the allegations contained in paragraph 36 of the Third Amended Complaint.

37.     Judge Arnold also found that there was "no adequate explanation" for the "significant deviation" during the June 2004 closing from what Wolf described as his typical loan structure. Wolf testified that his normal loan structure would include providing the person in Gambino's situation with an option to repurchase the subject property at a later date by repaying

the loan plus costs. With respect to the Niles Property, however, Wolf did not give Gambino this option. Rather, Koonce was given this option.

**ANSWER**:

Defendant denies that Plaintiff is accurately quoting or characterizing his testimony at trial, denies he is accurately quoting or characterizing the Finding of Fact and Judgment After Trial, and denies the allegations contained in paragraph 37 of the Third Amended Complaint.

38.    Judge Arnold found that Wolf had been involved with a scheme to defraud Gambino of title to the Niles Property and to one of the other properties (referred to as the "Kedzie" property). Judge Arnold found that, "In sum, Mr. Wolf was actively involved with all the transactions that resulted in WW Funding, LLC obtaining title to the Niles and Kedzie properties. That he was involved with Koonce in these transactions is a significant indication of malice."

**ANSWER**:

Defendant denies that Plaintiff is accurately quoting or characterizing the Finding of Fact and Judgment After Trial, and denies the allegations contained in paragraph 37 of the Third Amended Complaint.

39.    Judge Arnold also found that Wolf testified at trial inconsistent with his deposition, and that, "It was obvious from the testimony of Mr. Wolf that he used WW Funding, LLC to complete the transactions he had created and to be the title holder for the Niles and Kedzie properties. The slanders of title were thus the acts of WW Funding, LLC as well as they were Mr. Wolf's acts . . . ."

**ANSWER**:

Defendant denies that Plaintiff is accurately quoting or characterizing the Finding of Fact

19

and Judgment After Trial, and denies the allegations contained in paragraph 39 of the Third Amended Complaint.

40.     In addition to ruling in Gambino and North Star's favor in their actions to quiet title, and on their slander of title claims, Judge Arnold imposed damages against the defendants, including punitive damages totaling $175,000.00 against both Wolf (and WW Funding).

**ANSWER**:

Defendant denies that Plaintiff is accurately quoting or characterizing the Finding of Fact and Judgment After Trial, and denies the allegations contained in paragraph 36 of the Third Amended Complaint to the extent they are inconsistent with Finding of Fact and Judgment After Trial.

**E.     The Illinois Appellate Court Upholds the Trial Court's Findings.**

41.     Wolf and other defendants in the Litigation appealed Judge Arnold's decision to the Appellate Court of Illinois. On December 11, 2009, the Appellate Court issued a 49-page written opinion. A copy of this opinion is attached as Exhibit 7 hereto. ATG expressly adopts and incorporates Exhibit 7.

**ANSWER**:

Defendant admits the allegations contained in paragraph 41 of the Third Amended Complaint.

42.      The Appellate Court upheld Judge Arnold's findings in all material respects and held that:

a.      North Star's deed of December 2002, allegedly transferring the Niles Property from North Star to Gambino, was forged, and Wolf knew, or should have known,

that the deed was forged;

b. The Warranty Deed of June 2004, allegedly transferring the Niles Property from Gambino to WW Funding, was forged, and Wolf knew, or should have known, that the deed was forged;

c. Wolf (and WW Funding) had slandered the title to the Niles Property;

d. Plaza Bank's Mortgage on the Niles Property was obtained by the fraudulent scheme that Wolf participated in, which he knew about, and thus the Mortgage was void;

e. Wolf was involved with DiBenedetto in defrauding Gambino from the initial stages of the events that led to the Lawsuit, including (i) referring the initial loan on the Niles Property to Zippershtein in 2002 and (ii) earning (with his son) more than $9,000 in commitment fees on the 2002 transaction;

f. Wolf's testimony that he personally met with Gambino and that Gambino approved the Niles Property loan transaction with Zippershtein was not believable;

g. Wolf used WW Funding to complete the transactions to fraudulently obtain title to the Niles Property;

h. Wolf exercised malice against Gambino and slandered the title to the Niles Property;

i. The compensatory damages of $556,485 awarded by the Trial Court against Wolf were appropriate in connection with the slander of title claim with respect to the Niles Property; and

j. The Trial Court's award of $175,000 in punitive damages against Wolf was

21

appropriate because Wolf and WW Funding participated in a number of transactions whereby they obtained title to the Niles Property by means of fraudulent, forged legal documents.

**ANSWER**:

Defendant denies that Plaintiff is accurately quoting or characterizing the Appellate Court opinion, and denies the allegations contained in paragraph 42 of the Third Amended Complaint to the extent they are inconsistent with Appellate Court opinion.  Specifically, the Appellate Court reviewed the Trial Court record to determine if Judge Arnold's findings of fact and conclusions of law were against the manifest weight of the evidence – the Appellate Court opinion did not "hold" anything other than affirming the Trial Court decision when weighed against the manifest weight standard.

43.     At the time that WW Funding purchased the Niles Property in or around June 2004, and throughout the pendency of the Gambino Litigation, WW Funding and Wolf knew that WW Funding did not have clear and indefeasible title to the Niles Property.

**ANSWER**:

Defendant denies the allegations contained in paragraph 43 of the Third Amended Complaint.

**F.     Damages.**

44.     As a result of Wolf's fraud, as described in paragraphs 9-11 and 16-43 above, ATG issued its title insurance policies (Ex's. 4 and 5) to WW Funding and Plaza Bank and ATG had to provide WW Funding and Plaza Bank with a defense in the Litigation. ATG paid $260,424.26 in attorneys' fees and related costs and expenses doing so.

22

**ANSWER**:

Defendant denies the allegations contained in paragraph 44 of the Third Amended Complaint.

45. As a result of Wolf's fraud, as described in paragraphs 9-11 and 26-43 above, ATG issued the Mortgagee Title Insurance Policy to Plaza Bank; and since the Litigation invalidated Plaza Bank's mortgage, ATG also had to pay Plaza Bank $422,207.54, which was the unpaid amount due under Plaza Bank's now-invalid Mortgage on the Niles Property.

**ANSWER**:

Defendant denies the allegations contained in paragraph 45 of the Third Amended Complaint.

46. As a result of Wolf's fraud, as described in paragraphs 16-23 and 25-43 above, Plaza Bank loaned WW Funding $422,207.54. After the Litigation was completed and the Illinois Appellate Court issued its opinion, Plaza Bank was owed $422,207.54, which damages were caused by Wolf's fraud. Also, as a result of Wolf's fraud, Plaza Bank had incurred legal fees and costs to defend itself in the Litigation and it lost interest under the Promissory Note.

**ANSWER**:

Defendant denies the allegations contained in paragraph 46 of the Third Amended Complaint.

47. On or about August 22, 2008, Plaza Bank assigned, transferred and conveyed to ATG all of the Bank's interest in: the Promissory Note (Ex. 1), the Commercial Guaranty (Ex. 2), and the Mortgage on the Niles Property (Ex. 3). A copy of the Assignment is attached as Exhibit 8.

**ANSWER**:

23

Defendant, having insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 47 of the Third Amended Complaint, neither admits nor denies the allegations of paragraph 47 of the Third Amended Complaint, and demands strict proof thereof.

## ANSWER TO COUNT I
## ATG'S OBJECTION TO DISCHARGE UNDER §523(a)(2)(A)

48.     ATG repeats, realleges and incorporates herein paragraphs 1 through 47, and ATG brings Count I on its own behalf.

**ANSWER**:

Defendant restates and realleges Paragraphs 1 through 47 above as his response to this Paragraph 48 of Count I.

49.     When Wolf, on behalf of WW Funding, requested in or about June 2004 that ATG issue its policies of title insurance (Exs. 4 and 5), Wolf did not disclose the following material facts to ATG:

    a.      The deed to the Niles Property from North Star to Gambino in December 2002 was forged;

    b.      The Warranty Deed that was about to be signed, which would transfer the Niles Property from Gambino to WW Funding in July 2004, was forged and Gambino never agreed to the transfer;

    c.      WW Funding would not be obtaining clear and indefeasible title to the Niles Property at the closing;

    d.      Wolf was in the process of causing WW Funding to slander the title to the Niles Property;

    e.      Plaza Bank was in the process of obtaining an invalid Mortgage in the

24

Niles Property;

       f.     Wolf was participating in a scheme to deprive Gambino of his interest in the Niles Property as set forth in paragraphs 9-11 and 16-43 above; and

       g.     Wolf, through WW Funding, was getting more than $135,000 from the purchase of the Niles Property through the Plaza Bank loan.

**ANSWER**:

Defendant admits that he did not inform ATG of the statements in subparagraphs 49(a) through (f) of Count I of the Third Amended Complaint, but denies the allegations contained in subparagraph 49(g) of Count I of the Third Amended Complaint.

In addition, Defendant denies the substance of subparagraphs 49(a) through (g) of Count I of the Third Amended Complaint and denies that these are material facts.

50.     In September 2005, after the Litigation was filed by Gambino, when Wolf sent ATG a copy of the Complaint and when Wolf, on behalf of WW Funding, asked ATG to defend WW Funding pursuant to the Owners Title Insurance Policy (Ex. 4) and asked ATG to defend Plaza Bank pursuant to the Mortgage Title Insurance Policy (Ex. 5), Wolf did not disclose the following material facts to ATG:

       a.     The allegations in the Complaint were generally true;

       b.     The Warranty Deed in June 2004, transferring the Niles Property from Gambino to WW Funding, was forged and Gambino never agreed to the transfer;

       c.     Wolf had caused WW Funding to slander the title to the Niles Property;

       d.     Plaza Bank had obtained an invalid Mortgage in the Niles Property;

       e.     In obtaining the $445,000 loan and providing Plaza Bank with the Mortgage (Ex. 3) in the Niles Property, Wolf had failed to tell Plaza Bank that WW Funding did

not have clear and indefeasible title to the Property and that Gambino had claims against WW Funding and Wolf;

       f.     Wolf was participating in the scheme to defraud Gambino of his interest in the Niles Property as set forth in paragraphs 9-11 and 16-43 above; and

       g.     Wolf, through WW Funding, got more than $135,000 from the loan proceeds although it was the purchaser of the Niles Property.

**ANSWER**:

Defendant admits that he did not inform ATG of the statements in subparagraphs 50(a) through (f) of Count I of the Third Amended Complaint, but denies the allegations contained in subparagraph 50(g) of Count I of the Third Amended Complaint.

In addition, Defendant denies the substance of subparagraphs 50(a) through (g) of Count I of the Third Amended Complaint, and denies that these are material facts.

     51.     Had Wolf informed ATG of the facts set forth in paragraphs 49 and 50, ATG would not have issued its policies of title insurance, ATG would not have defended WW Funding and Plaza Bank in the Litigation and incurred legal fees and costs doing so, and ATG would not have had to pay the remaining balance due on Plaza Bank's mortgage.

**ANSWER**:

Defendant, having insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 51 of Count I of the Third Amended Complaint, neither admits nor denies the allegations of paragraph 51 of Count I of the Third Amended Complaint, and demands strict proof thereof.

     52.     Wolf was under a legal duty to disclose to ATG the facts set forth in paragraphs 49 and 50.

**ANSWER**:

Defendant denies the allegations contained in paragraph 52 of Count I of the Third Amended Complaint.

53.     Wolf intended to deceive and defraud ATG when he failed to inform ATG of the facts set forth in paragraphs 49 and 50.

**ANSWER**:

Defendant denies the allegations contained in paragraph 53 of Count I of the Third Amended Complaint.

54.     ATG justifiably relied on Wolf to disclose the facts set forth in paragraphs 49 and 50 when ATG issued its policies of title insurance and when defending WW Funding and Plaza Bank in the Litigation.

**ANSWER**:

Defendant, having insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 54 of Count I of the Third Amended Complaint, neither admits nor denies the allegations of paragraph 54 of Count I of the Third Amended Complaint, and demands strict proof thereof.

55.     Wolf's actions and omissions alleged herein constitute false pretenses, false misrepresentations and actual fraud with respect to ATG.

**ANSWER**:

Defendant denies the allegations contained in paragraph 55 of Count I of the Third Amended Complaint.

56.     As a result of Wolf's actions and omissions, Wolf is indebted to ATG in the amount of $682,631.80, and this sum is not dischargeable under §523(a)(2)(A) of the Bankruptcy

Code.

**ANSWER**:

Defendant denies the allegations contained in paragraph 56 of Count I of the Third

Amended Complaint.

WHEREFORE, Debtor/Defendant Stephen A. Wolf respectfully requests this Court enter

an order dismissing the instant action with prejudice; and for such other and further relief that

this Court deems just and proper.

## ANSWER TO COUNT II
## ATG'S OBJECTION TO DISCHARGE UNDER §523(a)(6)

57.     ATG repeats, realleges and incorporates herein paragraphs 1 through 47, and

ATG brings Count II on its own behalf.

**ANSWER**:

Defendant restates and realleges Paragraphs 1 through 47 above as his response to this

Paragraph 57 of Count II.

58.     Wolf intended ATG to issue its policies of title insurance (Exs. 4 and 5) and

intended ATG to defend his company (WW Funding) and Plaza Bank in the Litigation, fully

knowing that WW Funding had not obtained, and did not have, valid title to the Niles Property as

a result of the fraudulent scheme Wolf participated in as set forth in paragraphs 9-11 and 16-43

above. Wolf needed ATG to issue its policies of title insurance, or Plaza Bank would not have

loaned WW Funding $445,000 for its purported purchase of the Niles Property and WW

Funding/Wolf would not have received $135,000 from the loan proceeds.

**ANSWER**:

Defendant denies the allegations contained in paragraph 58 of Count II of the Third

Amended Complaint.

59.     Wolf knew that if Gambino and/or North Star ever asserted a claim against WW Funding or Plaza Bank to quiet title to the Niles Property, then ATG would be under a duty to defend and indemnify WW Funding and Plaza Bank, as a result of having issued its policies of title insurance.

**ANSWER**:

Defendant admits the allegations contained in paragraph 59 of Count II of the Third Amended Complaint.

60.     Wolf knew that it was substantially certain that, at some point, Gambino would realize that he had been defrauded out of the Niles Property by the conduct of Wolf (and others) and that Gambino would bring suit to quiet title, but Wolf never advised ATG of this information.

**ANSWER**:

Defendant denies the allegations contained in paragraph 60 of Count II of the Third Amended Complaint.

61.     Wolf intended to cause Plaza Bank to make the $445,000 loan and cause ATG to issue its policies of title insurance, and he intended that ATG would defend and indemnify WW Funding and Plaza Bank if sued by Gambino for Wolf's fraud. Wolf knew this would cause damage to ATG, and Wolf thereby intended to damage ATG and/or knew that damage to ATG was substantially certain to result from his actions and omissions.

**ANSWER**:

Defendant denies the allegations contained in paragraph 61 of Count II of the Third Amended Complaint.

62.     Wolf's conduct and omissions were willful and malicious since he intentionally failed to disclose his participation in a fraudulent scheme to deprive Gambino of the Niles Property by the use of forged documents and obtain $445,000 from Plaza Bank in June 2004.

**ANSWER**:

Defendant denies the allegations contained in paragraph 62 of Count II of the Third Amended Complaint.

63.     As a result of Wolf's actions and omissions, Wolf is indebted to ATG in the amount of $682,631.80, and this sum is not dischargeable under §523(a)(6) of the Bankruptcy Code.

**ANSWER**:

Defendant denies the allegations contained in paragraph 63 of Count II of the Third Amended Complaint.

WHEREFORE, Debtor/Defendant Stephen A. Wolf respectfully requests this Court enter an order dismissing the instant action with prejudice; and for such other and further relief that this Court deems just and proper.

**STEPHEN A. WOLF**, Debtor/Defendant


By**:**      /s/ Ariel Weissberg
    One of his attorneys


Ariel Weissberg, Esq. (No. 03125591)
John B. Wolf, Esq. (No. 6287700)
Weissberg and Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, IL  60605
T. 312-663-0004
F. 312-663-1514